ALBERT L. LAUER, JR. *v.* ESTHER
W. SCOTT

[No. 643, September Term, 1970.]

*Decided August 3, 1971.*

The cause was argued before MURPHY, C. J., and MOY-LAN and GILBERT, JJ.

*Albert D. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellant.

*Rex L. Sturm,* with whom were *R. Edwin Brown* and *Herbert D. Morrison* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant in this motor tort case, while endeavoring to pass the appellee's vehicle, ran off the road onto the shoulder and upon attempting to re-enter the road-bed, collided with the side of the appellee's vehicle, causing her injury. The trial judge granted appellee's motion for a directed verdict on the issue of liability and permitted the jury to decide only the question of damages. The jury returned a verdict in appellee's favor in the amount of $20,000.00. This appeal followed entry of judgment in the case.

We find no merit in appellant's contention that with the exception of cases involving the so-called "boulevard rule" the law of Maryland prohibits the granting of a directed verdict for a plaintiff in a motor tort case. Maryland Rule 552 a permits "any party" in a jury case to move for a directed verdict in his favor "on any or all of the issues." While directed verdicts for plaintiffs may have a special utility in boulevard cases (see *Peroti v. Williams,* 258 Md. 663, and *Shriner v. Mullhausen,* 210 Md. 104), their use is not so limited; we held flatly and without distinction in *Buchanan v. Galliher,* 11 Md. App. 83, 87-88, that the rule authorizing the granting of a directed verdict "applies with equal force, whether the motion is made by a plaintiff or by a defendant; whether the moving party or the opposing party has the burden of proving the issue; and whether the motion goes to the opposing party's whole case, or is partial, or is a request

for a peremptory instruction on the issue." The Court of Appeals recognized the broad application of the rule in *Peroti v. Williams, supra,* at page 670 (footnote 2), and in *Vogelsang v. Sehlhorst,* 194 Md. 413, as did we in *Levin v. Arrabal,* 11 Md. App. 89.

Nor do we find merit in appellant's further contention that the trial judge erred in granting the appellee's motion for a directed verdict on the issue of liability. It is, of course, the rule that when a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made; and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury. *Buchanan v. Galliher, supra,* at page 87. Thus, if there be any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then the trial court cannot invade the province of the jury by granting a directed verdict. *Plitt v. Greenberg,* 242 Md. 359.

The evidence at trial showed that the accident occurred during the afternoon hours of May 21, 1968 on a twenty foot wide asphalt macadam road in a rural section of Montgomery County. The road had a three per cent downgrade in the area of the accident, and a slight crown making it higher in the middle than at the edges. The shoulder of the road was rough and irregular, being about one and one-half feet wide. It was appellant's testimony that he undertook to pass appellee's vehicle after she crested a hill. He estimated that she was moving approximately five to ten miles below the forty mile per hour speed limit. Appellant said that no cars were coming, and the way looked clear when he started to pass. He testified that he speeded up and ran off the road onto the shoulder, then cut his wheels to come back on the

road when "[e]ither the wheels of the car were caught or I over-reacted, or something happened, and I was — it felt like I was kind of thrown like a sudden * * * kind of a jerk, and I made contact with * * * [appellee's] car." Asked why he ran off the road, appellant explained:

> "* * * To begin with, I believe there was some children on both sides of the road. * * * I don't know whether I unconsciously moved over to give * * * [appellee] more room, or whether I over-reacted, or maybe just seeing the children just startled me. I don't really know why I wasn't, I didn't jerk off the road. I just kind of eased off and tried to ease back on."

Appellant later stated that the children were only on the right side of the road but that "I wasn't anywhere near them." He volunteered: "I believe I just ran off the road because of a driver error, I guess." Still later in his testimony, appellant advanced the thought that he may have moved on the shoulder of the road to give appellee's vehicle more room. He testified that he didn't want to crowd her off her side of the road, especially when he saw the children. But he qualified this testimony by saying "[o]f course, it could be something else." He then conceded that "driver error" had "to play a factor" in the accident.

Appellant admitted that he was familiar with the road, having driven over it frequently. He knew the shoulder was irregular and rough and was made of "gravel and things" with telephone poles in close proximity to the side of the road. He admitted that on prior occasions he had run onto the shoulder of the road and had his wheels jerk when attempting to re-enter the roadbed. Asked why he decided to return to the roadbed while passing appellee, appellant said that "driving off the road was more dangerous than driving on the road." He said that in trying to get back on the road he moved slowly because he didn't want to "whip my wheel over because I was consciously thinking that that would, especially in the situation I was in, that that would be dangerous."

There was no evidence of any negligence on appellee's part. The collision occurred near the center of the road and at a time when the cars were running parallel to each other. Appellee admitted seeing children on the road but said they were not close to her. She testified that she did not pull to the left of the road and was never over the center line. She claimed that appellant admitted that the accident was his fault and that he hadn't seen the children when he started to pass.

On the basis of this evidence, and inferences properly deducible therefrom, appellant claims that the question of his negligence was one of fact for the jury. Specifically, he contends that upon seeing the children on the road after he began to pass appellee's vehicle, he anticipated, and there was evidence to show, that appellee moved to her left, although she did not cross the center line. He claims that as a result, he ran off the roadway onto the shoulder, and that upon attempting re-entry his wheel was hooked by the defect in the shoulder, causing the collision. He urges that the accident was not caused by the manner in which he operated his car; he suggests that the presence of the children on the road, which he could not reasonably have foreseen, constituted an emergency and that in the circumstances he was not negligent when he reacted by moving to the left onto the shoulder of the road. He relies primarily on *Fogle v. Phillips,* 191 Md. 114; *Harner v. Russell,* 185 Md. 519, and *R. & L. Transfer Co. v. State,* 160 Md. 222.

We think it clear that there was no evidence in the case that any emergency existed to justify appellant running off the road onto the shoulder. Compare *Burhans v. Burhans,* 159 Md. 370. Appellant did not testify that the children presented him with a sudden emergency. By his testimony, he "believed" he saw children on the road, but he conceded that they were not close to him. There was no evidence that appellee moved to the left when she saw the children in the road; indeed, she testified that she did not move to the left. That appellee was always on her side of the road was established by

appellant's own testimony. We think the best that can be said for appellant's testimony is that he had no clear idea why he ran off the road. But in doing so, and in striking appellee's car upon re-entering the roadbed, he violated the statutory duty of care imposed upon him by Section 11-303(1) of Article 66½ of the Maryland Code (formerly Section 219(a)) which prohibits the driver of an overtaking vehicle from driving to the right side of the roadway until safely clear of an overtaken vehicle. In driving onto the shoulder of the road, appellant voluntarily placed himself in a perilous position; he knew the irregular nature of the shoulder and, from past experience, knew that his wheels could become hooked causing him to jerk to the right. If any emergency existed, it was one created solely by appellant's own negligence in driving off the road. See *Williams v. Dawidowicz,* 209 Md. 77.

The evidence in the case, considered in a light most favorable to the appellant, leads inexorably to the conclusion reached by the trial judge, namely that as a matter of law the appellant operated his vehicle in a negligent manner as a proximate result of which it collided with appellee's vehicle. As the evidence showed that appellee was exercising due care at the time of the accident, and in no way contributed to it, we hold that the trial judge properly granted a directed verdict on the issue of liability.[1]

Appellant next contends that the court committed reversible error in refusing to grant any of his several motions for a mistrial. The claim is bottomed on these facts. In response to interrogatories served on her by appellant, appellee listed the names of all experts whom she expected to call as witnesses at the trial and stated she had received no written reports from them. Approximately one month prior to trial, appellee filed a supple-

---

[1]. Direction of a verdict that "liability" exists is ordinarily improper unless all elements, including damages, are so convincingly shown that rational minds could not differ as to their existence. *Peroti v. Williams, supra,* at p. 669. Appellant makes no contention that this rule is applicable in this case.

mental answer attaching a letter from a medical expert whom she intended to call as a witness. The trial was scheduled for Monday, November 16, 1970. On the preceding Wednesday, a national holiday, appellee engaged the services of an expert in the field of accident investigation to testify at the trial respecting the speed of appellant's car at the time of the accident. Her counsel immediately phoned appellant's counsel and so advised him. Appellant promptly moved for a trial continuance, but the motion was denied. The trial began the following Monday. The motion for continuance was renewed. After affording appellant a brief pretrial opportunity to discuss the expert's testimony with him, the court overruled the motion for continuance. The trial then began and appellee's expert, Dr. Raff, was permitted to lay out the scene of the accident and to testify that in his expert opinion appellant's car was going sixty miles per hour at the time of the accident. Shortly after giving this testimony, it was discovered that Dr. Raff had prepared a chart which had relation to his estimate of the speed of appellant's car. He had not shown the chart to appellant's counsel. The court found the chart to be the report of an expert which, under the discovery rules, should have been shown to opposing counsel. Although Dr. Raff's testimony concerning the speed of appellant's car was not based upon data developed on the chart, and the chart was not offered in evidence, the trial judge, on appellant's motion, struck out all Dr. Raff's testimony relating to speed. The court instructed the jury to disregard Dr. Raff's testimony about the speed of appellant's vehicle at the time of the accident. It refused, however, to grant a mistrial, as requested by appellant.

Appellant advances an array of arguments in support of his contention that the court committed prejudicial error in not granting a mistrial. He urges that he was prejudicially injured by appellee's failure to timely and formally answer his interrogatory concerning the use of Dr. Raff as an expert witness, and in failing prior to trial to supply him with a written copy of the chart pre-

pared by the expert. He claims that the court, in permitting Dr. Raff's testimony, violated the discovery rules. He maintains that the improper reception of Dr. Raff's testimony concerning the speed of appellant's car, even though subsequently stricken from evidence, and the jury cautioned to disregard it, had a prejudicial impact on the jurors' deliberations on the issue of damages. He claims that Dr. Raff's testimony that appellant's car was proceeding at sixty miles per hour at the time of the acci- dent left the jury with the impression that appellant was a reckless and wanton individual. He claims that the improper evidence of great speed at the time of the collision had a bearing on the degree of the ensuing trauma and influenced the jury when it assessed damages sustained by appellee. In this connection, appellant urges that as appellee claimed only internal injuries, the force of the collision was a matter of vital importance and the admission of Dr. Raff's testimony could not be corrected by a cautionary jury instruction. Appellant suggests that the court compounded its error when, in giving its jury instructions at the end of the case, it again told the jury to ignore Dr. Raff's testimony concerning the speed of the vehicle. He claims that the amount of the verdict — $20,000.00—showed that the jurors were prejudiced by the evidence of speed, particularly since it was highlighted in their minds by the court's jury instructions.

While appellant's anguished cries that he was "fouled" by Dr. Raff's testimony concerning the speed of his vehicle are entirely understandable, we do not think that under the facts and circumstances of this case they merit reversal of the judgment. Despite appellee's failure to formally comply with the discovery rules, we cannot find on the record before us that the trial judge abused his discretion in denying appellant's motion for a continuance and in permitting Dr. Raff to testify. The question of the speed of appellant's vehicle related essentially to the question of liability. To the extent that speed was a relevant factor in determining damages, the jury had before it a photograph showing significant damage to

appellee's vehicle. Though valued at only $250.00, the car was declared a total loss. The collision impact was upon the center post of appellee's vehicle between the back and front door and caused the car seat to become dislodged and drop a short distance. Dr. Raff's testimony concerning appellant's speed was highly speculative at best; indeed, the trial judge, before striking it from the record, characterized it as "guessing all over the courtroom." Despite appellant's protestations to the contrary, we cannot conclude that the court's admonishment to the jury to disregard Dr. Raff's testimony concerning speed was not heeded. The appellee's internal injuries (the dropping of a kidney) were supported by medical evidence which included testimony that the shock or trauma of the accident, beyond mere braking or sudden stopping, could cause the organ to be displaced. By appellant's own testimony, appellee's car was moving at thirty-five miles per hour when he speeded up to pass her. We think, therefore, that the motions for mistrial were properly denied.

*Judgment affirmed; appellant to pay costs.*