MICHAËL A. NEWTON *v.* EDWARD SPENCE ET AL.

[No. 236, September Term, 1973.]

*Decided February 13, 1974.*

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Solomon Reddick* for appellant.

*William W. Cahill, Jr.,* with whom were *Perry Raabe* and *Weinberg & Green* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

Appellant, a former part-time employee of Sears Roebuck & Co. (Sears), was awarded conpensatory and punitive damages aggregating $42,500 after a jury trial under a five-count declaration alleging assault and battery, false arrest, false imprisonment, slander and malicious prosecution. The granting of Sears' motions for judgments *n.o.v.* reduced appellant's recovery to $11,500. Here he seeks primarily the restoration of the difference of $31,000, representing punitive damages against Sears for $6,000 under Count IV (slander) and $25,000 under Count V (malicious prosecution).

We conclude that Sears' motions should have been denied. However, we also hold that the trial court's error is not correctible by reinstatement of the above judgments and that the case must be remanded for a new trial against Sears only, for the assessment of punitive damages pursuant to Counts IV and V.

I

The appellees, in addition to Sears, are two individuals who were also employed by Sears at its store in Mondawmin Mall, Baltimore, on May 25, 1970, when the cause of action arose: Edward Spence, a full-time employee in the hardware department with certain supervisory authority over appellant and other part-time personnel; and Michael D. DiNicolo, the security manager in the store at that time.

At the time of trial in January 1973 appellant was 25 years old and a graduate student. In 1970 he was employed full-time at the Baltimore City Health Department and

part-time as a sales clerk in the hardware department at Sears, working four nights a week from 6 p.m. until 9 p.m.

Cash shortages had been occurring on the two cash registers in the hardware department for several weeks prior to May 25, 1970. Surveillance of the department was being made by DiNicolo through the use of a "spread sheet" indicating the names of the employees on duty at the time the thefts occurred. Appellant was one of the employees under suspicion. This was known to Spence as well as to the personnel manager, D. A. Wiley.

On May 25, 1970, at about 7 p.m., DiNicolo and Spence appeared near the cash register where appellant was working and when he finished with a customer, DiNicolo invited him to the security office. Appellant testified that DiNicolo was "pulling" him along to the security office, a point denied by DiNicolo. At the office appellant was informed by DiNicolo that Spence had seen him remove cash from the cash register and place it in his left front pocket. Spence repeated his accusation. At the request of DiNicolo, appellant emptied his pockets, revealing only a few small bills and some change. Appellant remained in the security office from approximately 7 p.m. until near closing time at 9 p.m. The evidence was disputed as to whether the door was open or closed during this period. DiNicolo questioned him at intervals about the alleged theft. At one point, Personnel Manager Wiley appeared and both DiNicolo and Spence withdrew from the security office. Wiley informed them that the cash and checks in the cash register had been counted twice by Wiley and an assistant security officer, revealing a cash shortage of $156.00.

Appellant throughout the confrontation maintained his innocence and stated that Spence was a liar. DiNicolo had administered the *Miranda* warnings, stating that he did this whenever he brought an employee to the security office "for questioning under the law." Upon request appellant was permitted to use the telephone and called his brother-in-law.

According to appellant, at the conclusion of the confrontation he requested a letter of apology from DiNicolo and DiNicolo, he testified, said "fine." DiNicolo denied this

and testified that immediately after appellant left his office he telephoned the police at the Northwest Station, made a verbal report of the theft and waited for a detective to arrive to whom he gave a statement. This, he stated, was a necessary prerequisite to obtaining an arrest warrant for which he made application to a magistrate the next morning.

Upon returning to his home after 9 p.m. on the 25th of May, appellant telephoned his attorney for the purpose of setting up an appointment with DiNicolo as soon as possible.

When appellant returned home from his daytime employment on May 26, he was informed by his parents that the police had informed them of a warrant for his arrest. He immediately went to the police station where he was fingerprinted and photographed and detained in a cell for approximately 45 minutes until bail could be arranged.

The following day, May 27, 1970, appellant was tried before a magistrate on a charge of larceny after trust of $156.00 and was acquitted. DiNicolo and Spence both testified against him.

Appellant had never before been arrested. He testified that the detention in the store followed by his arrest and processing caused him anxiety and necessitated medical care. Received in evidence were a bill for attorney's fees in the amount of $500 and a doctor's bill for $40.00.

Appellant further testified, when asked if he knew any reason why Spence would falsely accuse him, that they had previously had "a couple of words" over whether company policy required appellant to wear a tie and, perhaps more significantly, over appellant's refusal to ring Spence's key on the cash register to boost his commissions. On the other hand, he said, their relationship "was not a bad relationship — just none at all."

A somewhat strange but incontrovertible aspect of the evidence is that the audit department of Sears discovered, on the morning of May 27, 1970, that no shortage had in fact occurred. This was not known to DiNicolo nor to Spence when they testified that morning against appellant. Indeed DiNicolo testified that this revelation was not made known

to him until approximately two years later when answers to interrogatories were being prepared by Sears' counsel.

Nevertheless, Spence firmly maintained, even at the time of the trial in this case, that he had actually seen appellant take money from the cash register and place it in his pocket. On his part, Spence denied having any animus toward appellant. As to his motivation for reporting appellant to DiNicolo, he testified:

> "I felt every employee in the department should have a right to be protected. [I]f anyone else had saw [sic] the same thing I am sure they would have went [sic] to Mr. DiNicolo."

Again, he testified that his job was to

> ". . . help run the department and to protect properties of Sears and Roebuck in the hardware department."

He was aware, he said, of the prior shortages in the department. He asserted that there was "no bad blood" between him and appellant; that he had never requested that appellant should ring his key; and that he bore no hostility toward appellant because of his unwillingness to wear a necktie in accordance with company policy.

Spence, DiNicolo and Sears were named as defendants in each of the five counts of the declaration, each count alleging that Spence and DiNicolo were acting "individually, jointly and as agents, servants and employees" of Sears. Each count contained an *ad damnum* clause seeking compensatory damages in the amount of $50,000 and punitive damages in the amount of $150,000.

The appellees, in a joint plea, interposed the general issue and justification as to all counts, with an additional plea of "probable cause" to Count V which alleged malicious prosecution.

At the close of appellant's case, the court reserved decision on all motions of defendants for directed verdicts but, at the close of all the evidence, it granted Spence's motion for a directed verdict as to assault and battery (Count I) and as to

false imprisonment and false arrest (Counts II and III). DiNicolo's motion for directed verdict as to slander and the motions of all three defendants as to libel (Count IV) were also granted; but Spence's motion as to slander was denied. The motions of all three defendants with respect to Count V were reserved. Plaintiff's motion for directed verdict on all counts was denied. The court, however, ruled that so much of the motion as sought a ruling that DiNicolo was an agent of Sears as a matter of law would be granted in the instructions.

The case was submitted to the jury on issues as to Count V only. These were included in a form entitled "verdicts," prepared by the trial judge, copies of which were given to the foreman and to each member of the jury at the outset of the court's instructions. A general verdict, however, was taken by the clerk in open court with the following results:

*Assault and Battery* (Count I):
Verdict for DiNicolo and Sears
(not submitted on punitive damages)

*False Imprisonment and False Arrest* (Counts II & III combined):
$7,500 compensatory damages against DiNicolo and Sears (submitted on both compensatory and punitive damages)

*Slander* (Count IV):
$1,000 punitive damages against Spence
$6,000 punitive damages against Sears
(submitted on punitive damages only)

*Malicious Prosecution* (Count V):
$2,000 compensatory damages against Spence and Sears
$1,000 punitive damages against Spence
$25,000 punitive damages against Sears.

Post trial motions for a new trial respecting Counts II and III only, for judgment *n.o.v.* and in arrest of judgment were filed on behalf of Spence and Sears. The motions for a new trial were denied, as were Spence's motions for judgment *n.o.v.* and in arrest of judgment. Sears' motions for

judgment *n.o.v.* on Count IV, slander, and Count V, malicious prosecution, were granted.

The trial judge, after granting Sears' motions for judgment *n.o.v.* with respect to Counts IV and V, was requested to state the reasons for his ruling and did so by letter dated April 3, 1973, wherein he explained as to the slander count:

> "The Defendant Sears' Motion for Judgment N.O.V. as to the Fourth Count in the Declaration was granted for the reason that there is no legal basis for holding the employer Sears responsible for slander committed by its employee Spence. *The jury, by its verdict holding the employee Spence liable for the slander, found as a fact that Spence had maliciously lied* when he testified that he had observed the Plaintiff Newton stealing from the cash register. *The jury having so found, it is the Court's opinion that the law does not permit the jury to find that such malicious action is binding upon the employer of the slanderer under the doctrine of respondeat superior.*" (Emphasis added.)

As for its action with respect to the malicious prosecution count, the trial court stated:

> "The Defendant Sears' Motion for Judgment N.O.V. and Motion in Arrest of Judgment as to the Fifth Count of the Declaration were granted for the reason that the jury's answer to the issues relating to this Count precluded vicarious liability on the part of the employer Sears for the acts of the Defendant Spence. The jury's answer to issues concerning the Fifth Count establish that it found Sears' principal prosecutor, Mr. DiNicolo, to have acted on probable cause. *Since the Defendant Sears was found by the jury to have probable cause for the institution of prosecution through the actions of Mr. DiNicolo, it is inconsistent for the jury to thereafter find that the Defendant Sears did not*

*have probable cause when considering the action of the employee Spence."* (Emphasis added.)

Appellant contends there was error in these rulings. He also urges, less forcefully, that the trial court erred in granting Spence's motion for a directed verdict on the first three counts at the close of all the evidence.[1] We will consider this contention first.

## II

When called upon by a motion for a directed verdict to rule on the legal sufficiency of the evidence to require submission of any issue to the jury, the trial court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made; and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury. *Lauer v. Scott,* 12 Md. App. 555, 280 A. 2d 917 (1971).

Viewing the evidence in this light, we find that the contention by appellant that the court erred in refusing to permit the jury to decide whether Spence "aided and abetted" an assault and battery by DiNicolo upon him is without merit. In *Duke v. Feldman,* 245 Md. 454, 226 A. 2d 345 (1967), the Court of Appeals said:

> "A person may be held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort. [citations omitted] However, a person who was present when an assault or battery was committed is not liable as a participant in the absence of any action on his part amounting to an encouragement of the tortious incident."

---

**1.** The appellees also entered an appeal, presumably founded on a claim that the award of compensatory damages of $7500 under Counts II and III was excessive, as argued by Sears in its motion for a new trial. However, their appeal was subsequently withdrawn.

Nothing in the record supports a fair inference that Spence encouraged an assault or battery upon Newton. Spence informed DiNicolo of what he claimed to have observed, then accompanied DiNicolo and Newton to the security office, walking behind them. This action appellant interprets as "presence to render assistance should it become necessary" — a classical ingredient of aiding and abetting a crime. No such complicity or covert aid manifested itself in Spence's conduct. Whatever "tugging" took place between DiNicolo and Newton, there is no reason to believe that when Spence accompanied them to the office he was doing more than presenting himself there to substantiate the impending accusation. We find no error in the directed verdict on Count I.

With respect to Counts II and III combined alleging false arrest and false imprisonment,[2] we are confronted with the narrow question whether, by itself, a false report of an alleged misdeed resulting in the detention of an individual subjects the person imparting the information to liability for a consequential arrest and imprisonment.

It is general law that a private person does not become liable for false imprisonment (or false arrest) when in good faith he provides information, even mistaken information, to lawful authorities, even though such information may be a principal cause of another's imprisonment. This principle is stated in Prosser, *Law of Torts* (1971) p. 47, in the following terms:

> "There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted, or requesting a proper arrest when an officer makes an improper one instead, or swearing to a complaint before a magistrate who turns out not to have jurisdiction. The remedy in such cases, if any, is by an action for malicious prosecution."

---

2. These were tried by the court and argued by the parties on appeal as one count.

On the other hand, it is settled that one who knowingly gives false information to an arresting officer becomes liable when such information is a determining factor in the decision to make an arrest. Prosser, *supra*, citing *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53 (1965); *Wehrman v. Liberty Petroleum Co.*, Mo. App. 1964, 382 S.W.2d 56. *See also* 1 Harper and James, *The Law of Torts* (1956), § 4.11, p. 341.

In the instant case, as the trial court clearly recognized in its instructions to the jury, there was evidence, contradicted, to be sure, which supported an inference that Spence was guilty of deliberate falsehood in reporting that he had seen appellant withdraw cash from the register and place it in his pocket. Accordingly the question of Spence's involvement in the alleged false imprisonment should have been submitted to the jury for its determination, and the court's failure to do so, we hold, was error. However, this does not constitute reversible error under the circumstances of this case. The jury, after all, returned a verdict for false arrest and false imprisonment of compensatory damages in the sum of $7500 against Sears and DiNicolo. Had the issue of Spence's liability *vel non* been submitted to the jury, it is possible, of course, that Spence could have been found liable. He would then have been included in the verdict, becoming a joint tortfeasor with Sears and DiNicolo. There can, however, be no suggestion of prejudice to appellant. The satisfaction of his judgment is scarcely in jeopardy.

### III

Since the principal thrust of this appeal is that the trial court erred in granting Sears' motions for judgment *n.o.v.* on Counts IV and V charging slander and malicious prosecution, the essential question we face is whether the court should have granted Sears' motions for a directed verdict on those counts at the close of all the evidence. This is so because the trial court is governed by the same considerations in determining a motion for judgment *n.o.v.* as in determining a motion for a directed verdict. *Burnes v. Goynes*, 15 Md. App. 293, 290 A. 2d 165 (1972). As former

Chief Judge Brune of the Court of Appeals said in *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961):

> "The general rule by which the sufficiency of the evidence is to be tested when this Court is reviewing a motion for a directed verdict or judgment *n.o.v.* for the defendant is well established as being that this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover — that is, the evidence must be viewed in the light most favorable to the plaintiff."

This is true although such evidence and inferences are contradicted in every particular by the opposing evidence. *Baliles v. Bryant,* 207 Md. 332, 114 A. 2d 601 (1955). " 'If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury,' and a motion for judgment *n.o.v.* denied." *Miller v. Michalek,* 13 Md. App. 16, 281 A. 2d 117 (1971), quoting *Belleson v. Klohr,* 257 Md. 642, 646. Turning to Count IV, then, we observe first that no error is claimed in the granting of a directed verdict on behalf of the appellee DiNicolo. It is similarly conceded by the appellees that the utterance made by Spence constituted slander *per se* and thus required no showing of special damages. This determination was made by the court as a matter of law and is unexceptionable. *American Stores Co. v. Byrd,* 229 Md. 5, 181 A. 2d 333 (1962).[3]

Given the character of the utterance as slander *per se,* the issue boils down to the correctness of Sears' contention that it was not, as a matter of law, responsible for the slanderous statement of its employee Spence. As a rule the question of

---

**3.** Defamation *per se* is also an exception to the rule requiring a substratum award of actual compensatory damages before punitive damages may be awarded. *See Shell Oil Co. v. Parker,* 265 Md. 631, 641, 291 A. 2d 64 (1972), n.6. Here, the court submitted the slander count to the jury as to punitive damages only.

agency *vel non* is properly reserved for determination by the jury. In *Lewis v. Accelerated Transport-Pony Express, Inc.*, 219 Md. 252, 148 A. 2d 783 (1958), where it was conceded that a corporate officer had uttered a statement slanderous *per se*, Judge Prescott, later Chief Judge, quoted the rule applicable in North Carolina and characterized by him as "the law generally," as follows:

> "An act is within the scope of the servant's employment where necessary to accomplish the purpose of his employment and intended for that purpose, although in excess of the powers actually conferred upon the servant by the master. That the act was committed while the servant was on duty performing the functions of his employment and it was committed for the purpose of furthering the business of the master, rather than its method of performance, is the test of employment. When a wrong is committed by an employee in performing or attempting to perform the duties and functions of his employment it is immaterial whether the injury was a result of negligence or willful and wanton conduct; nor is it necessary that the master should have known that the particular act was to be done. * * * The question of liability does not depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of the authority conferred by the master."

Judge Prescott also relied upon the case of *Hopkins Chemical Co. v. The Read Drug & Chemical Co.*, 124 Md. 210, 92 A. 478 (1914), stating:

> "[I]t was also pointed out [in *Hopkins*] that the question as to whether an act is within the scope of a servant's employment is generally one of fact for the jury, *with the burden being on the defendant to show that the servant was not engaged in the course of his employment;* but, under proper circumstances, the question of an act being within

the scope of an employee's employment may become one of law." (Emphasis added.)

In *Lewis,* where the evidence left no doubt that the employee's utterance was not merely slanderous but a deliberate lie, the Court held that at least a jury question had been raised on the agency issue.

Sears contends in its brief that the question of Spence's agency properly became one of law for the trial judge because Spence was "using his position to give vent to personal motives in no way related to the business of his employer." The evidence, however, permits no such unequivocal assertion. Spence was on the job at the time the utterance was made and was a full-time employee of the hardware department with certain supervisory jurisdiction over the part-time personnel. His testimony previously quoted was that he had no hostility or ill feeling toward the appellant but was protecting his employer's property when he informed on him. At the time of trial in this case Spence still maintained that he had observed Newton stealing the money, and his employer Sears likewise filed a plea of justification as well as the general issue.

The question of purely personal motivation for Spence's action was put to the jury in the court's instructions, which ruled that DiNicolo was, as a matter of law, the agent of Sears, but left for jury determination under Counts IV and V the question of Spence's agency. The court instructed that Sears would be responsible if the jury found Spence was acting within the scope of his employment and in furtherance of the business of Sears, but that if it found he was "motivated solely and exclusively by some personal motive such as personal dislike for the plaintiff, Newton, or a grudge against him or some other purely personal motive not related to his position as an employee of Sears, then whatever action he took or whatever he said is not binding on his employer. . . ." This instruction, not excepted to by the appellees, fully conforms with Maryland law on the subject. *A. & P. Co. v. Noppenberger,* 171 Md. 378, 189 A. 434 (1937), citing *Restatement, Agency,* § 235; *see also Schloss v. Silverman,* 172 Md. 632, 192 A. 343 (1937).

Consequently, whether or not the appellee Spence was motivated by some personal dislike or grudge is not, in our judgment, a question of law but one of fact which the court properly submitted to the jury.

The court's explanation of its action in then granting Sears' motion for judgment *n.o.v.* ("The jury . . . found as a fact that Spence had maliciously lied") is understandable only as the court's conclusion that the jury found Spence to have acted from purely personal motives. But this conclusion, aside from constituting improper inquiry into the substance of a jury verdict in weighing the merits of a motion for judgment *n.o.v.*, flies in the face of the court's own instruction *supra* that a verdict against Sears necessitated a finding that Spence's conduct was motivated at least in part by a desire to further Sears' interests.

Sears attempts to buttress the court's explanation by pointing to the jury award of punitive damages against Spence, apparently reasoning that, since generally punitive damages may be awarded in tort cases only upon a finding of actual malice or its legal equivalent, *Siegman v. Equitable Trust Co.*, 267 Md. 309, 297 A. 2d 758 (1972), their award here bespeaks a finding by the jury of personal ill will on Spence's part toward the appellant. This argument, however, overlooks the exceptional nature of an action for defamation *per se* in Maryland, where the established rule is that when words are actionable *per se* and are uttered without privilege or justification, punitive damages are recoverable without proof of actual malice. While this is not the majority rule and has been scored by at least one authority on the law of damages,[4] it was enunciated at an early date in Maryland and has been consistently followed by the Court of Appeals. In *Coffin v. Brown*, 94 Md. 190, 50 A. 567 (1901), the Court said:

> "The only question as to [the second prayer] is whether it was proper to authorize the jury to give exemplary or punitive damages without proof of express malice. While the decisions of some other

---

4. McCormick, *Handbook on the Law of Damages* (1935).

Courts have differed on that subject, it is settled in this State in a case such as this, where the publication was not privileged and no excuse for it was offered. In *Fresh v. Cutter*, 73 Md. 87, it was held that an instruction allowing punitive damages without finding existence of actual malice was erroneous, because there were facts in that case to be passed on by the jury which raised the question of a qualified privilege, but the Court approved of such an instruction which was given in *Padgett v. Sweeting*, 65 Md. 404, where there was no such question. *See also Blumhart v. Rohr*, 70 Md. 328; *Nolan v. Traber*, 49 Md. 460."

*See also Shockey v. McCauley*, 101 Md. 461, 61 A. 583 (1905); *Simon v. Robinson*, 221 Md. 200, 154 A. 2d 911 (1959); *American Stores Co. v. Byrd, supra; Fennell v. G.A.C. Finance Corp.*, 242 Md. 209, 218 A. 2d 492 (1965).[5] We conclude, therefore, that the court erred in holding as a matter of law that Sears was not liable for the slander of its employee Spence and in granting Sears' motion for judgment *n.o.v.* on Count IV.

## IV

The same principles of agency previously discussed are dispositive of the question whether the court erred in granting Sears' motion for judgment *n.o.v.* as to its liability for malicious prosecution under Count V acting through Spence. The requisites for this cause of action were restated by Judge (later Chief Judge) Hammond of the Court of Appeals in *Banks v. Montgomery Ward & Co., Inc.*, 212 Md. 31, 128 A. 2d 600 (1957):

"To prevail in a suit for malicious prosecution the plaintiff must show: (1) that the criminal

---

**5.** Furthermore, Sears itself interposed a plea of justification which it wholly failed to sustain, and under a still viable rule in Maryland this unsupported plea is evidence of malice on Sears' part wholly distinct from any malice imputed to it under agency principles. *Coffin v. Brown, supra; Evening News Co. v. Bowie*, 154 Md. 604, 141 A. 416 (1928); *Domchick v. Greenbelt Consumer Services, Inc.*, 200 Md. 36, 87 A. 2d 831 (1951).

proceeding instituted or abetted by the defendant has terminated in his favor, apart from whether any inference as to probable cause for the proceeding arises from the termination; (2) a want of probable cause for the proceeding which may, or may not, be inferred from the termination of the proceeding, depending upon the manner of the termination; (3) malice, which is a primary purpose for the institution of the proceeding, other than that of bringing an offender to justice. *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 173, *supra*, and authorities cited."

Sears took no exception at trial to the court's instruction that if the jury found Spence had "abetted or was a party to" — a "moving party" in — the prosecution of Newton it could hold him individually liable for the prosecution.[6] Further Sears concedes that the proceedings against Newton terminated in an acquittal and the jury could therefore infer

---

**6.** While Spence did not swear out the warrant and it is clear that total discretion to proceed criminally against Newton lay with DiNicolo, who prior to initiating formal proceedings independently investigated Spence's accusation and found (it appeared) a cash shortage, *see* Prosser, *supra*, p. 837, yet the jury could have found that Spence was in a very practical sense the catalyst of the prosecution. The swearing out of the warrant resulted from his report to DiNicolo buttressed by the counting of the money. He then testified in the criminal trial against Newton without being subpoenaed to do so, and, indeed, as the sole eyewitness. In *Stansbury v. Fogle*, 37 Md. 369, 384 (1873), a leading and oft-cited case on this point, the Court of Appeals held on somewhat similar facts:

"The evidence in this case clearly shows that the defendant participated in the prosecution at least to the extent of giving it voluntary aid and assistance. For assuming the police officer was called in and directed to arrest the plaintiff by Mr. Waterman [defendant's attorney] *acting upon his own volition*, still the defendant had been present at the previous interview, as testified to by the witnesses[,] in which the plaintiff was told in effect that he had obtained the horse from the defendant upon the strength of representations which were false. And he was also present when the arrest was made, and then *without any legal compulsion*, he accompanied the parties to the magistrate's office, and there testified under oath, and upon his sworn testimony, the commitment in the usual form was made out, by virtue of which the plaintiff was imprisoned. This of itself constitutes such voluntary aid and assistance in the prosecution as would render the defendant liable, if the other essential facts of want of probable cause and malice were established." (Second emphasis in original).
*See also Fertitta v. Herndon*, 175 Md. 560, 3 A. 2d 502 (1939).

that Spence had no probable cause for his participation. Finally, Sears registered no exception to the court's instruction that malice may be inferred from lack of probable cause "but it is not a necessary inference . . . that is [it is] a rebuttable inference and is not necessarily binding upon you."

On appeal Sears appears to concede Spence's individual liability for malicious prosecution under Count V but "submits that the arguments utilized in the discussion of the slander verdict (non-agency of Spence due to conduct motivated by personal ill will) apply, by a parity of reasoning, and with equal force, to the malicious prosecution of appellant allegedly committed by Sears acting through Spence." To this it is sufficient reply that the court, after initial exception by Sears to its instruction on the point, was scrupulous in restating the agency question for the jury, without further exception, to wit:

> "The Plaintiff must establish that Mr. Spence was acting within the scope of and during the furtherance of his employment in his activity. If your minds are in a state of even balance as to whether Sears is responsible for Mr. Spence's activities then that question must be resolved in favor of Sears."

The court also implicitly recognized by the written issues which it submitted to the jury that Sears' liability for the conduct of Spence was independent of its liability for the conduct of DiNicolo. It asked the jury:

> *"ISSUES:*
>
> No. 1. Was there a malicious prosecution of the Plaintiff by the Defendant Spence? ANSWER: Yes —— No ——
>
> No. 2. Was there a malicious prosecution of the Plaintiff by the Defendant Sears Roebuck and Company acting through the Defendant Spence? ANSWER: Yes —— No ——
>
> No. 3. Was there a malicious prosecution of the

Plaintiff by the Defendant DiNicolo? ANSWER: Yes —— No ——

No. 4. Was there a malicious prosecution of the Plaintiff by the Defendant Sears Roebuck and Company acting through the Defendant DiNicolo? ANSWER: Yes —— No ——

Yet while Sears' liability acting through Spence was in no way conditioned by these issues upon its liability acting through DiNicolo, the court explained its granting of Sears' motion for judgment *n.o.v.* by the jury's "inconsistent" findings that Sears had probable cause through DiNicolo's conduct but not through Spence's.[7] We see no inconsistency. If Spence's participation in the prosecution was such as to render him individually liable, then it is no legal anomaly that Sears could be bound by his actions while absolved by those of DiNicolo, for the responsibility assumed by Sears over the acts of its employees under *respondeat superior* extended to Spence directly and not through the intermediary of DiNicolo.

The court erred in granting Sears' motion for judgment *n.o.v.* on Count V.

V

In the absence of cross appeals by the corporate and/or individual defendant-appellees, the record before us contains final judgments for *compensatory* damages under Counts III and V aggregating $9,500;[8] and for *punitive* damages of $2,000 against appellee Spence under Counts IV and V.

Ordinarily, therefore, our mandate on this appeal would constitute an affirmance of these final judgments and a reinstatement of the punitive damage awards against Sears under Counts IV and V which, we have found, were erroneously set aside by the granting of Sears' motions for

---

7. In fact, of course, the jury may have found only that DiNicolo's conduct rebutted the inference of malice on his part from lack of probable cause.

8. $7500 compensatory damages against DiNicolo and Sears under the false imprisonment-false arrest counts and $2000 compensatory damages against Spence and Sears under the malicious prosecution count.

judgment *n.o.v.* We shall, of course, affirm these final judgments. However, the case of *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 298 A. 2d 16 (1972) leads us to conclude that the case against Sears for the assessment of punitive damages under the slander and malicious prosecution counts must be remanded for a new trial.

In *Cliser,* a customer of Montgomery Ward filed suit for false arrest, assault and battery and slander resulting from his mistreatment at the hands of an employee of Montgomery Ward. The jury returned verdicts of $500 compensatory damages and $4500 punitive damages under each of the three counts. The Court of Appeals, while not disturbing the compensatory award, modified the judgment by reducing the amount of punitive damages to $4500.[9] The Court held, in an opinion by Levine, J., that in the particular circumstances of the case the trial court in its instructions had failed to furnish guidelines to the jury in its consideration of whether to award punitive damages for "each of the three torts," the result being:

> ". . . that the jury 'pyramided' the claims into a triple recovery of punitive damages on the basis 'of an episode that was one continuous occurrence.' " (p. 425)

In the present case, the record discloses that Spence's accusation of theft on the part of appellant Newton resulted not only in his immediate detention (false imprisonment) at the Security Office of Sears but also in his arrest on the next afternoon and trial (malicious prosecution) the morning after the arrest. The slander, therefore, set in motion a sequence of events culminating fairly rapidly in the malicious prosecution, thus presenting a situation where "guidelines" should have been prescribed under the rationale of *Cliser.*

Upon remand, appropriate instructions should be given by the trial court placing squarely before the jury for its

---

**9.** This disposition was possible, the Court found, because "we deal here with error uniquely convertible into monetary terms [and] we need only make an adjustment, without further proceedings below. . . ."

determination the question of whether or not appellant's claims for punitive damages against Sears under the affected counts (Count IV, slander, and Count V, malicious prosecution) are duplicative. They should be asked to determine whether or not appellant's claims for punitive damages, although stated in separate counts, are based upon one continuous tort for which one sum against Sears should be awarded.

Relevant in this connection is the reliance of the Court of Appeals in *Cliser* upon *Drug Fair v. Smith*, 263 Md. 341, 283 A. 2d 392 (1971). In that case a three-count declaration alleging assault and battery, false imprisonment and malicious prosecution contained *ad damnum* clauses for $25,000 compensatory and $50,000 punitive damages in each count. The trial court instructed that these claims could not be "pyramided". Nonetheless, counsel for the appellees in closing argument urged an award of $75,000 compensatory damages and $150,000 punitive damages. Instructing the jury to disregard counsel's reference to the *ad damnum* clauses, the court gave the following additional instructions which the Court of Appeals in *Cliser* stated "should have been given here":

> "Now, the reason that the Court so instructs you is that a person cannot be twice awarded for his loss. Damages cannot be duplicated. The damages in this case, although based on different grounds arose out of an episode that was one continuous occurrence on the date that it happened; that is, the assault and battery, the arrest, the malicious prosecution instituted." 263 Md. at 354.

For the guidance of the trial court on remand, we point out that the jury should be carefully instructed that: (1) the sole question for the jury's determination is the amount of punitive damages which may be assessed against Sears, punitive damages having been previously awarded against Spence but denied against DiNicolo; (2) that the matter of compensatory damages is not before the jury for determination, compensatory damages having already been

awarded against DiNicolo, Spence and Sears in the prior proceeding; and (3) that although appellant's declaration seeks separate awards of punitive damages under Counts IV and V against Sears, if the jury should find that appellant's claims arose out of an occurrence that was one continuous transaction, one sum against Sears under both counts should be awarded rather than two.

> *Judgments under Counts I, II and III affirmed; judgment under Count V for compensatory damages against appellees Spence and Sears affirmed; judgments under Counts IV and V for punitive damages against appellee Spence affirmed; judgments n.o.v. under Counts IV and V vacated; cause remanded for a new trial against appellee Sears Roebuck & Co. under Counts IV and V consistent with this opinion.*
>
> *Costs to be paid by the appellees.*