# TIMOTHY V. IAGER *v.* GEORGE ALDEN ROGERS, III

[No. 779, September Term, 1974.]

*Decided July 24, 1975.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*Vincent A. Mulieri,* with whom were *Thomas J. Wohlgemuth* and *Smith & Wohlgemuth* on the brief, for appellant.

*T. Benjamin Weston,* with whom were *Robert W. Fox* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellee.

Powers, J., delivered the opinion of the Court.

Shortly before midnight on 24 June 1971, Timothy V. Iager, appellant here, was riding his motorcycle eastward on Route 198 in Anne Arundel County from Laurel toward Fort Meade. At that point Route 198 is paved and two lanes wide, one lane for traffic in each direction. It is intersected on the north side only by Route 216, a public highway, which leads to the D. C. Children's Center. Iager testified that when he was about 800 feet from the intersection, he saw an automobile in the right lane in front of him. It appeared to be stopped or traveling very slowly, also eastward. Without reducing his speed or sounding his horn, Iager swung his cycle to the left lane in order to pass the car. The car was being driven by its owner, the appellee, George Alden Rogers, III. Rogers made a left turn into Route 216. The motorcycle collided, in the left lane, with the left rear side of the car.

The operators of both vehicles filed suit,[1] each alleging that the accident was caused by the negligence of the other. Iager sought to recover damages for personal injuries and loss of property; Rogers claimed only property damages. Trial commenced on 21 May 1974 in the Circuit Court for Anne Arundel County before a jury, Judge George Sachse presiding. Iager first presented his evidence, at the conclusion of which the court granted a motion by Rogers for a directed verdict in his favor. In the action brought by Rogers, the jury returned a verdict in his favor against Iager for $363.05, the stipulated damages. Judgment was thereafter entered in favor of Rogers in each case. From those judgments, Iager timely noted this appeal.

According to Iager's declaration, Rogers was solely at fault in failing to keep a proper lookout for traffic behind him before turning and in failing to signal his intention to turn. Rogers, on the other hand, alleged that the accident resulted solely from the conduct of Iager in operating his

1. Iager's declaration was filed on 14 September 1971 in the Circuit Court for Anne Arundel County. Rogers initiated his suit on 29 November 1971 in the District Court of Maryland. The record shows that Rogers' cause was removed to the Circuit Court and the two cases were consolidated for trial.

motorcycle in a careless, reckless and negligent manner and on the left side of the road in violation of the vehicle laws. After the directed verdict was granted against Iager at the close of his plaintiff's case, and Rogers completed his case, the jurors were instructed that Iager was negligent as a matter of law and that their function was to determine whether Rogers was negligent, so as to bar recovery by him.

In this appeal Iager contends that the trial judge erred in ruling that he was negligent as a matter of law. We hold that the judge ruled correctly, and we shall affirm both judgments.

A motion for a directed verdict at the close of plaintiff's case puts to the test of legal sufficiency the evidence adduced by him. The applicable principles were restated by this Court in *Newton v. Spence*, 20 Md. App. 126, 316 A. 2d 837 (1974), where at 134, we said:

> "When called upon by a motion for a directed verdict to rule on the legal sufficiency of the evidence to require submission of any issue to the jury, the trial court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made; and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury. *Lauer v. Scott*, 12 Md. App. 555, 280 A. 2d 917 (1971)."

Iager maintains that, under the circumstances in the case before us, the issue of his negligence, whether characterized as primary or contributory, presented a question for the jury.

It is undisputed that the motorcycle was being operated on the left side of the road when the collision occurred. At that time, its operator was in violation of at least two statutes [2]

---

2. According to Iager's own testimony, he did not sound his horn to indicate his intention to pass. The situation confronting him could have

which govern the operation of motor vehicles. By Code, Article 66 ½, section 11-301 (a) (1), the law requires that:

"(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing this movement;"

Section 11-305 provides in part:

"(a) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless authorized by the provisions of this part * * *.

"(b) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

* * *

(2) When approaching within 100 feet of or traversing any intersection or railroad grade crossing;"

The statute clearly requires that when a vehicle is driven to the left side of the center of the roadway in overtaking and passing, its operator must observe the rules governing that movement. One of the rules governing that movement is that no vehicle shall at any time be driven to the left side of the roadway when approaching within 100 feet of or traversing an intersection. The importance of this prohibition[3] was

---

been one of those instances when it would be not only appropriate but legally necessary for a vehicle about to pass to sound a horn. See Smith v. Associated Transport, Inc., 211 Md. 134, 140, 126 A. 2d 584 (1956), and Code, Art. 66½, § 11-303 (2).

3. Even where an intersection, less than 100 feet away, had no connection with a collision involving a left turn into a private driveway, the Court of Appeals in Palmer Ford, Inc. v. Rom, 216 Md. 165, 139 A. 2d 697 (1958),

explained by the Court of Appeals in *May v. Warnick*, 227 Md. 77, 175 A. 2d 413 (1961). The Court said, at 83-84:

"There can be little doubt that one of the primary reasons for prohibiting an overtaking vehicle from going to the left side of the road in passing another at, or within a specified distance from, an intersection is that the front car may be anticipating a left turn. 3 Berry, *Automobiles* (7th Ed.), § 3.42; *Cierley v. Uhalt*, 10 P. 2d 769 (1932) (Cal.); 3 Blashfield, *Cyc., Automobile Law & Practice*, § 965. If the present provisions of the law are complied with, there is little danger from this source: the motorist contemplating a left turn is required to approach the intersection (where two-way traffic is being accommodated on both streets) in that portion of the right half of the roadway nearest the center line thereof (giving an appropriate signal, in accordance with Sections 228, 229 and 230), but he is prohibited from passing to the left of the center until the intersection is reached, Section 225 (b); and the following motorist is forbidden to pass the lead vehicle on the left of the roadway, Section 221 (b) (2).

"This prohibition in Section 221 against overtaking and passing 'to the left side of the roadway * * * when approaching within 100 feet of or traversing any intersection,' when applied to two-way highways, eliminates much of the danger of a collision that would be involved if the overtaking vehicle were permitted to pass on the left, or wrong, side of the road at or near the intersection."

Of course, a violation of the statutory requirement to keep to the right must be a proximate cause to support a finding

---

said, of the turning driver, that he "may well have assumed that the driver of the overtaking vehicle would not attempt to pass at a point where passing is prohibited by the motor vehicle law".

of negligence. In *Sun Cab Co. v. Cusick*, 209 Md. 354, 121 A. 2d 188 (1956), the Court of Appeals, after stating the principle that a driver who fails to comply with the statute which requires him to keep to the right is *prima facie* guilty of negligence, went on to say, at 361:

> "But we have made it clear that a violation of this rule does not constitute negligence except where it is the direct and proximate cause of the injury. [Citations omitted.]"

In that case, the Court reversed a judgment entered on a jury verdict against Sun Cab, and held that as a matter of law the cab driver's conduct was not the direct and proximate cause of the accident.

In the case before us, the evidence showed that the motorcycle struck the automobile when the front of it had already entered the intersecting road. The point of impact on the automobile was on the left side, on that part of the left rear fender or quarter panel which extends behind the left rear wheel. The collision would not have occurred but for the fact that the cycle was in the left lane. That its position was a proximate cause of the accident is a conclusion about which reasonable minds could not differ. We hold that appellant's violation of the statute was, as a matter of law, a proximate cause of the collision.

An occurrence quite similar factually to the present one was considered by the Court of Appeals in *Miller v. Mullenix*, 227 Md. 229, 176 A. 2d 203 (1961). There, a motorcyclist was following two automobiles on a two-way, two-lane highway at night. Within 500 feet of an intersection, the cyclist moved to the left lane to pass. The cyclist sounded his horn and passed the first car. He began to overtake the second car when both were about 75 feet from the intersection. The car turned left, and the vehicles collided. The motorcycle operator sued for personal injuries. At the trial the motorist claimed that she turned on her left directional signal approximately 200 feet from the intersection. She saw no obstacle in the rear-view mirror. The roadway markings at that point included a solid white

line, with a broken white line paralleling it on the southbound side. At a distance of 270 feet from the intersection the markings continued as two solid lines. The motorcycle operator testified that he did not see any turn signal, and that he was not aware of either the intersection or the double line. The trial court allowed the case to go to the jury, which found for the cyclist. The motorist's motion for judgment n.o.v. was denied. The Court of Appeals reversed the judgment in that case on the ground that the cyclist was guilty of contributory negligence as a matter of law. It held that the defendant's motions for a directed verdict or a judgment n.o.v. should have been granted. It said, at 232-33:

> "The familiar rule to be applied in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law is that the act so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence. We think the appellee was guilty of contributory negligence as a matter of law because of his violation of two basic rules of the road by driving on the left side of the highway in a proscribed area and by attempting to pass another vehicle within 100 feet of an intersection, and that these acts were prominent and decisive and a direct and proximate cause of his injury."

> \* \* \*

> "His own testimony that he was about 75 feet from the intersection in the northbound lane when he began passing the appellant means that he had already been travelling to the left of the double white line for approximately 195 feet and, of course, that he was attempting to pass a vehicle within 100 feet of the intersection when the collision occurred. While ordinarily the mere violation of a rule of the road will not constitute negligence *per se*, it is well established that a driver

who fails to comply with the statute 'which generally requires drivers of motor vehicles to keep to the right of the center of the roadway, is *prima facie* guilty of negligence where the violation directly and proximately causes a collision resulting in injury, and the burden is then cast upon the driver to overcome the presumption of negligence by showing that he was justified in driving in the center or upon the left half of the road.' *Sun Cab Co., Inc. v. Cusick,* 209 Md. 354, 360-361, 121 A. 2d 188 (1956).

"We find nothing in the record to excuse appellee's presence on the 'wrong' side of the road at the time in question. There is no suggestion that any emergency existed requiring him to drive on the left or to attempt to pass the two cars ahead. His failure to observe the double white line, the nearby intersection and appellant's directional signal does not excuse his violation of the rules of the road."

Appellant argues here that his case is distinguishable from *Miller v. Mullenix, supra,* because the broken line on his side of Route 198 continued up to its intersection with Route 216, and in fact appeared again east of the intersection. The fact that Mullenix violated more than one statute did not dilute the fact that his driving on the left half of the road in an intersection was a proximate cause of his collision, and negligence as a matter of law. We have expressed our holding in this case without "shoring it up" by referring to other evidence that Iager travelled Route 198 frequently, was aware of the intersection of Route 216, and had driven past two highway signs warning approaching drivers of the intersection. We forewent reliance upon other evidence tending to show negligence by Iager, because we did not want to intimate that other evidence was needed.

Iager's evidence that a broken line was painted on the highway cannot justify his violation of the clear prohibition of the statute. Code, Art. 66 $^1/_2$, § 11-307 autho-

rizes appropriate signs or markings to designate a portion of a highway where driving to the left of the roadway would be especially hazardous. That statute undoubtedly was intended to permit prohibitory markings at hazardous locations where driving on the left side of the road is not otherwise prohibited by law. Surely it could not be construed to mean that a positive law is nullified because markings on the roadway fail to call the driver's attention to the law.

Appellant further contends, in effect, that the question of his negligence was for the jury, because of some evidence in the case that, in violation of a statutory requirement, Rogers did not signal his intention to turn. He appears to draw support from the opinion of this Court in *Whitt v. Dynan*, 20 Md. App. 148, 315 A. 2d 122 (1974). In that case we said, at 155:

> "Thus, in Maryland, when a claim of liability for negligence or a defense of contributory negligence is founded upon a violation of a penal statute, the jury generally must determine both whether the violation constitutes negligence and, if so, whether the violation is the proximate cause of the accident."

In that case a pedestrian, walking along the edge of a highway where sidewalks were not provided, failed to obey the requirement that he walk facing traffic. We discussed the equal and reciprocal rights of motorists and pedestrians on public highways. We concluded that on the facts of that case the question of whether the pedestrian's violation of the statute was a proximate cause of his injury was one upon which reasonable minds could differ, and was properly submitted to the jury.

We have already said in this case that the appellant's own evidence showed that as a matter of law he was negligent. Whether Rogers was also negligent has no relevance to that issue. As the Court of Appeals said in *Miller v. Mullenix, supra*, at 234:

> "We do not reach the question whether appellant

was guilty of primary negligence. Where the plaintiff in a suit for personal injury was guilty of contributory negligence, the negligence of the defendant becomes immaterial."

Iager appealed from both of the judgments against him. His single contention is that the trial judge erred in taking from the jury the question of his negligence. He does not argue that it was error to submit the question of negligence by Rogers to the jury, nor did he preserve that question for appellate review.

The trial judge ruled, correctly, that Iager was negligent as a matter of law. The jury found that Rogers was not negligent.

*Judgments affirmed.*
*Appellant to pay costs.*