## WESTERN UNION TELEGRAPH CO. v. THOMASSON.

### (Circuit Court of Appeals, Fourth Circuit.   May 7, 1918.)

#### No. 1591.

1. APPEAL AND ERROR ☞1050(1)—HARMLESS ERROR—EVIDENCE.

   In an action for malicious prosecution, based on arrest of plaintiff on a charge of embezzlement, admission in evidence of newspaper clippings giving an accurate account of the arrest was not harmful to defendant.

2. MALICIOUS PROSECUTION ☞71(2)—QUESTIONS FOR JURY.

   In an action for malicious prosecution, based on arrest of plaintiff on a charge of embezzlement, where there was conflicting testimony as to probable cause, that issue was for the jury.

3. PRINCIPAL AND AGENT ☞169(3)—RATIFICATION OF ACTS OF AGENT—PLEADING.

   In a suit for malicious prosecution, based on arrest of plaintiff on charge of embezzlement, an answer requiring plaintiff to prove his whole case did not constitute a ratification by defendant of the acts of its agents in causing plaintiff's arrest, so as to justify the imposition of exemplary damages.

4. MALICIOUS PROSECUTION ☞68—EXEMPLARY DAMAGES—GROUNDS.

   In a suit for malicious prosecution, based on arrest of plaintiff by defendant's agents on the charge of embezzlement, where there was evidence from which the jury might find that defendant's agents were so anxious that plaintiff should not get away with defendant's money that they were reckless of what injustice they might do him, it was not error to allow the jury to award exemplary damages.

5. MALICIOUS PROSECUTION ☞23—MALICE—PROBABLE CAUSE.

   Lack of probable cause is not inferable, even from the most express malice.

6. MALICIOUS PROSECUTION ☞24(3)—WANT OF PROBABLE CAUSE—ABANDONMENT OF PROSECUTION.

   Abandonment of the prosecution has no tendency to prove lack of probable cause.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action by C. F. Thomasson against the Western Union Telegraph Company.  Judgment for plaintiff, and defendant brings error.  Reversed.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for plaintiff in error.

M. J. Fulton, of Richmond, Va. (Byrd, Fulton & Byrd, of Richmond, Va., and W. H. Daniel and J. Toomer Garrow, both of Hopewell, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge.   In an action for malicious prosecution, the defendant in error, here called the "plaintiff," obtained a judgment for $5,000 against the plaintiff in error, herein referred to as the "defendant."

On the 30th of November, 1915, at Hopewell, Va., an agent of defendant swore out a warrant charging plaintiff with embezzlement of

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its funds. He was arrested about half past 2 on the afternoon of that day, was at once locked up in a large, but dirty, cell, with a score of other prisoners of various ages, colors, sexes, and degrees of personal cleanliness, or lack of it. Some 4½ hours later the charge against him was, with the consent and at the instance of the defendant, dismissed, and he was released.

Something over a month before he had entered the employ of the defendant as an operator and clerk in its Hopewell office, which at that time was conducted as a branch of the older station at Petersburg. Hopewell was then a busy place. Many messages were sent from it, and considerable sums were there paid in for telegraphic transmission to other points. Every one of the four or five operators employed was authorized to receive money. He was expected at once to enter its receipt upon the sheet kept for that purpose, charging himself with it, by putting his initials against the entry. After the close of the office in the evening, this sheet was checked up, and each operator turned over the money for which he was responsible. He was not authorized to retain any of it. His own salary was paid, not out of these funds, but direct from the Petersburg office. The operators were in the habit of going out for their meals, and, while there was a safe in the office into which, at such times, they could put money, it does not appear that they were required so to do, or even that such was the usual practice.

On the morning of the day named, one Strickland, the head of the Petersburg office, received a letter from a superior official, directing him to dismiss plaintiff for misconduct. In what the misconduct consisted was not stated, and, so far as the record shows, was not known to anybody who had anything to do with the prosecution. Strickland went to Hopewell, and somewhere about 11 o'clock in the forenoon read the letter to the plaintiff. He had occasion to go elsewhere in Hopewell, and while he was away from the office it so happened that its head, one Seagle, was also called out. During their joint absence, the plaintiff left, taking with him what money he had collected that morning, which, as was subsequently discovered, amounted to a few cents over $246. Strickland subsequently came into the office and learned that neither the plaintiff nor the money was there. As his train was about to leave for Petersburg, he did nothing at the time, but on his arrival at his destination telephoned Seagle. On learning that the plaintiff had not been seen, he told Seagle to find the plaintiff and get the money. If he could not get it in one way, to get it in another; if he had to have the plaintiff arrested, to do so, but that he should get the money, if he could, without having an arrest made. About 2:30, Seagle swore out the warrant and the arrest followed. The plaintiff had the money with him, and, when taken into custody, turned it over to the police officials, with the statement that it belonged to the defendant.

The defendant numbers its assignments of error from 1 to 6; but, as one of these contains three specifications of respects in which it is said the court below went wrong, there are in reality eight assignments in all. They will be discussed, not in the order in which they appear

in the record, but in that in which we find it most convenient to deal with them.

## Refusal of a New Trial.

The defendant complains that its motion for a new trial was denied. That ruling is not reviewable here.

## Exclusion of Evidence of Plaintiff's Intoxication.

The court refused to permit the defendant to prove by the police justice that the plaintiff, when brought before him some 4½ hours after his arrest, seemed to be under the influence of liquor. This assignment was not argued by the defendant, orally or in its brief. Upon the record in this case, the court was right in excluding the testimony, however admissible it might have been under some other circumstances.

## Admission of Newspaper Accounts of the Arrest.

[1] Newspaper articles telling of plaintiff's arrest were put in evidence by him over the objection of the defendant. The natural, proximate, and indeed almost inevitable consequence of instituting a prosecution is that the newspapers shall make mention of it. The plaintiff in such case should be free to show that they have. The production of the papers in question would ordinarily be the best evidence of what they contained, and yet frequently it would be unfair to permit a newspaper account to be read to the jury, as the imagination of the reporter or his desire to make a readable story may run away with him. The defendant usually has nothing to do with the article, and it would be unjust to hold him responsible for its language. In the case at bar, it so happens, however, that the clippings offered in evidence were colorless. They truly stated what had taken place, and stopped there. Their admission did not hurt the defendant.

## Refusal to Instruct Verdict.

[2] The defendant asked for an instructed verdict. It said the evidence disclosed the existence of probable cause for the prosecution, and did not show that in instituting it the agents of the defendant acted within the scope of their authority. The defendant did not make the latter contention, either in oral or printed argument, doubtless because it was clearly unsustainable upon the record. The defendant does strenuously insist that there was probable cause for the prosecution. Whether what was known to the defendant's agents would have led a reasonably prudent and cautious person to feel that there was probable cause to believe the plaintiff guilty of embezzlement depended to a large extent upon the precise words passing between Strickland and the plaintiff, upon the length of time before his arrest during which plaintiff had been absent from the office, the thoroughness of the search made for him, and other such matters. On these points there was conflicting testimony upon which it was the province of the jury to pass. The court was right in refusing to tell them that they must return a verdict for the defendant.

### Punitive Damages.

[3] The defendant complains that the instruction of the court allowed the jury to award punitive damages. It says that it cannot be made to pay smart money for the acts of its servants, unless it ordered them to do what they did, or subsequently ratified or adopted that which, without its orders, they had done. There is no evidence here of ratification. So far as appears, the bringing of this action may have been the first notice that the defendant, as distinguished from Strickland and Seagle, ever had that the plaintiff had been prosecuted. The latter contends that defendant, by its pleadings, adopted what its servants had done. In point of fact, the defenses set up can scarcely be said to do more than, by proper traverses, to require the plaintiff to prove his case, and all of it. The defendant ordinarily should be able to do that without rendering itself liable to punishment; but, even if the pleadings went further, they would not, in this court at least, entitle the plaintiff to exemplary damages. We said in Norfolk & Portsmouth Traction Co. v. Miller, 174 Fed. 607, 98 C. C. A. 453:

"Where a right to recover punitive damages from a master arises from a ratification by the master of the act of the servant, assuredly the act must have been ratified before the action was instituted."

[4] But in this case is there any necessity for ratification? A corporation cannot act, except through a human agent. When it authorizes him to cause the arrest of its employés when in his discretion such action is necessary for the protection of its rights or interest, his act in causing such arrest is its. Neither in its pleadings, nor by its evidence, does the defendant question Strickland's right to act in the premises for it. He directed the arrest, in order that he might get its money for it. There is no hint or suggestion that, in so doing, he was not acting within the scope of his duties. If he was, the jury were free to award punitive damages if they saw fit. It is true there is nothing in the facts to suggest that either Strickland or Seagle had any personal ill will against the plaintiff, or any wish to make things disagreeable for him; but there is testimony from which the jury might find that they were so anxious that plaintiff should not have a chance to get away with defendant's money that they were reckless of what injustice they might do him. There was no error in allowing the jury to award exemplary damages.

### The Claim for False Arrest.

Originally the plaintiff claimed both for false arrest and for malicious prosecution. The defendant asked the court to tell the jury that there was no evidence of the former. This instruction was not given. In the testimony not a word was said as to any false arrest, as distinguished from the malicious prosecution. It is therefore not probable that the omission of the court hurt the defendant. It is unnecessary to decide whether it did or not, as for another reason the case must go back.

### Motive Immaterial, if Probable Cause Existed.

[5] The defendant requested an instruction that if its agents had probable cause to believe the plaintiff guilty, and acted upon such belief, it made no difference what their motive for instituting the prosecution was. This the court did not do, either by granting the instruction asked for, or by including its substance in other parts of the charge. If there is probable cause for the prosecution, it makes no difference what motive inspired the prosecutor. "Malice may be presumed from lack of probable cause; but the lack of probable cause can never be inferred, even from the most express malice." Brown v. Selfridge, 224 U. S. 192, 32 Sup. Ct. 444, 56 L. Ed. 727; Staunton et al. v. Goshorn, 94 Fed. 52, 36 C. C. A. 75.

In this case it was highly important to the defendant that the jury should be made to understand that, if Strickland and Seagle had probable cause to believe that the plaintiff had embezzled its money, it could not be mulcted, notwithstanding the evidence showed that defendant's agents, in what they did, had no other purpose than to recover its funds, then in plaintiff's possession. In the instructions actually given, we do not find that this rule of law was stated to the jury with the clearness which the defendant had the right to ask.

### Is Abandonment or Dismissal of the Prosecution Evidence of Want of Probable Cause?

[6] The defendant asked the court to say to the jury that the abandonment of the prosecution was not evidence of want of probable cause for its institution. The authorities are in hopeless conflict as to what significance should be attached to the way in which the criminal proceedings came to an end. The Supreme Court of Appeals of Virginia, in common with the overwhelming majority of the state courts of last resort, holds that the acquittal of the plaintiff by the tribunal which has the right to try and decide the case, is not evidence of lack of probable cause. Singer Manufacturing Company v. Bryant, 105 Va. 403, 54 S. E. 320. All that was determined was that the guilt of the prisoner had not been proved beyond the possibility of reasonable doubt. We are in full accord with this view, although there is respectable authority to the contrary. In at least five out of six jurisdictions, a different rule is held applicable when, after hearing, the prosecution terminated in a dismissal by a magistrate whose power is limited to an inquiry as to whether reasonable cause had been shown to hold the accused for trial. Such a dismissal is said to be prima facie evidence that there never was any probable cause for the prosecution. The highest court of Virginia has declared its adherence to this doctrine, although in the case in which it did so the question was not directly in issue. Jones v. Finch, 84 Va. 208, 4 S. E. 342.

This rule gives equal weight to all dismissals after hearing. The real probative force of such action, of course, in fact, if not in theory, depends upon the character and capacity of the particular official who heard the charge, and upon the completeness with which the evi-

dence was brought out before him. In a malicious prosecution case, it would be, of course, utterly inadmissible to go into inquiry as to what kind of a man the justice of the peace was. The jury in the instant case would have been entitled to find that the police magistrate, who made the order of dismissal, did so at the request of the defendant's agents, and without having heard or considered any testimony. The instruction for which the defendant asked was based upon the assumption that they might reach that conclusion. There are authorities which hold that the abandonment by the prosecutor is evidence against him, whether a dismissal of the charge by the magistrate would or would not be, and there are still other decisions which come to precisely the opposite conclusion; that is to say, that such abandonment is without evidentiary value.

We do not find that this question has been passed upon in Virginia. For ourselves we are of opinion that the safest rule is to hold that acquittal, dismissal, and abandonment are equally inadmissible to prove lack of probable cause, although, of course, always competent evidence to show that the prosecution has terminated favorably to the accused. The whole question is well considered in Davis v. McMillan, 142 Mich. 395, 105 N. W. 862, 3 L. R. A. (N. S.) 928, 113 Am. St. Rep. 585, 7 Ann. Cas. 854. In coming to our conclusions, we have not limited our consideration to the citations made by the parties, but have tried to examine all the cases to which text-books and digests give reference. No good purpose would be served by here listing them. We think that the conclusions to which we have come are in accord with the deductions which may be reasonably drawn from what the Supreme Court said in Brown v. Selfridge, 224 U. S. 189, 32 Sup. Ct. 444, 56 L. Ed. 727; and in Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116.

Between the time in which an original complaint may be made and the end of the prosecution, many things may happen, even when, as in this case, the interval does not exceed a few hours. After the plaintiff had turned in defendant's money, it was highly improbable that the prosecution could be carried to a successful conclusion, and yet a reasonable man, who knew all the jury were entitled to find the defendant's agents knew when they swore out the warrant, and nothing more, might well have done precisely what they did. If the criminal case had gone to trial, almost any jury would have felt that the prompt return of the money raised a reasonable doubt of guilt. A thousand other things leading to the conclusion that a successful prosecution was scarcely to be hoped for might happen, or might come to the knowledge of the prosecutor after the proceedings had been begun, and before they were finally dismissed by the magistrate, either at the request of the prosecutor, or upon his own judgment. It is not well that one who has caused an arrest, and who comes to recognize the hopelessness of going further, should, by stopping there, be held in a subsequent malicious prosecution case, to have made evidence against himself. To persist in a criminal prosecution after a conviction has become unlikely is, in the absence of exceptional circumstances, to persecute the accused, to waste the time of the court

and of the witnesses, and to bring the administration of criminal justice into disrepute. The prosecutor should not be put in a position in which self-defense may seem to compel him to go on. Moreover, many a prosecution is dropped because the prosecuting witness is moved to pity, and is there any reason why his yielding to the pleadings of mercy should be evidence against him? In the absence of controlling authority in Virginia, it is not necessary for us to pass on the question as to whether, if it existed, we would be bound by it. In Phillips on Instructions to Juries in Virginia, § 563, it is stated that the instruction asked for by defendant in this case, and refused by the court, was given in Evans v. Atlantic Coast Line R. R. Co., 105 Va. 72, 53 S. E. 3. The Supreme Court of Appeals in that case said that the instructions given below accurately stated the law.

For error in refusing this instruction, and for failure to instruct the jury, as requested, that, if there was probable cause, the defendant's motives in instituting the prosecution were immaterial, the judgment must be reversed.