## FINE *v.* KOLODNY ET AL.

[No. 93, September Term, 1971.]

*Decided December 10, 1971.*

*Motion for rehearing filed January 7, 1972; denied January 10, 1972.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*William E. Chamberlain* and *Philip F. Bennett* for appellant.

*David L. Bowers,* with whom were *Miles & Stockbridge* on the brief, for A. Lewis Kolodny and Mildred Kolodny, part of appellees.

*Frank J. Vecella,* with whom were *Anderson, Coe &*

*King* on the brief, for Isaac H. Taylor, Irving J. Taylor and Taylor Manor Hospital, part of appellees.

Submitted on brief by *Norman P. Ramsey* and *Semmes, Bowen & Semmes* for Paul C. Wolman, Jr., other appellee.

FINAN, J., delivered the opinion of the Court.

Mrs. Margaret B. Fine, plaintiff-appellant, filed suit in the Circuit Court for Baltimore County against Dr. A. Lewis Kolodny and Mildred Kolodny, his wife; Paul C. Wolman, Jr., Esq.; Taylor Manor Hospital; and Isaac H. Taylor and Dr. Irving J. Taylor, licensees of Taylor Manor Hospital, defendants and appellees, for false imprisonment. The case was tried before a jury with Maguire, J., presiding and upon conclusion of the appellant's case, the court directed verdicts in favor of the defendants. Mrs. Fine has appealed from these judgments.

The court below in entering the directed verdicts ruled that the plaintiff's evidence showed that she voluntarily consented to her own admission and treatment at the Taylor Manor Hospital (hospital) a private psychiatric clinic in Howard County, and submitted to confinement in that institution.

Unfortunately, Mrs. Fine acted as her own counsel in the court below and her case was not enhanced by her lack of knowledge of court procedure and the rules of evidence. On appeal her counsel contend that there was evidence in the record from which the jury could have found that Mrs. Fine did not voluntarily submit to admission and treatment at the hospital and hence the lower court erred in granting the directed verdicts in favor of the defendants. *Tully v. Dasher,* 250 Md. 424, 440, 244 A. 2d 207 (1968) ; *Trionfo v. Hellman, Inc.,* 250 Md. 12, 15, 241 A. 2d 554 (1968). After reviewing the record we are of the opinion that the undisputed evidence compels the conclusion that she did voluntarily enter the hospital for treatment. It would serve no useful purpose to relate in detail the sequence of bizarre and sad events which

led to Mrs. Fine's confinement, since her act of voluntarily submitting herself to admission and treatment at the hospital rendered her previous actions and those of the defendants only tangentially relevant. However, in fairness to the defendants, we would characterize their roles as that of "good Samaritans."

The evidence discloses that close to midnight of September 25, 1965, Dr. Kolodny, a family friend and neighbor of the Fines, was aroused by the sound of firearms being discharged in the vicinity of the Fine residence. Knowing that Mrs. Fine was at that time separated from her husband and probably alone, Dr. Kolodny, fearing for her safety, summoned the police and accompanied a police officer in an unmarked car to the Fine home. The house was in darkness. The police officer placed a portable red light behind the windshield of the police vehicle and they attempted to locate Mrs. Fine, calling her by name. A bullet narrowly missed the police officer as he proceeded, flashlight in hand, around the corner of the house. Shortly thereafter, Mrs. Fine emerged from a wooded area near the home carrying a rifle and a revolver. Strung between the trees and between the trees and the house was a trip-wire with bells attached. The trio then entered the house where it appeared that several windows had been shot out from within the home. Mrs. Fine appeared to be in a highly emotional state. A police lieutenant, another policeman and the Fines' family attorney, Paul Wolman, Jr., Esq., shortly arrived on the scene.

Mrs. Fine was eventually persuaded to go to the hospital. Efforts were made to reach Mr. Fine but to no avail and Dr. Kolodny made arrangements for her admission. Dr. Kolodny, Mrs. Kolodny and Paul Wolman, Jr. accompanied Mrs. Fine in an automobile to the hospital. One of the police officers followed in the unmarked police car. The testimony of the police officers who were present at the Fine home and that of the officer who followed the car transporting Mrs. Fine was that she went voluntarily to the hospital and no threats or restraints

were employed. This was uncontroverted. The evidence reveals that upon arrival at the hospital Mrs. Fine was at first reluctant to sign a voluntary admission form but several hours thereafter, around 9 a.m., she did. The execution of this form was witnessed by Dr. Henry Klark, a reputable phychiatrist, who testified that he spent most of the night trying to relieve Mrs. Fine's over-wrought condition. Dr. Klark's psychiatric impression of Mrs. Fine was "schizophrenic reaction paranoid, probably long time latent." The Taylor Manor Hospital records also contain certificates of two independent physicians, Dr. McGrath and Dr. Herbert, dated October 2nd and 7th respectively, certifying her to be mentally incompetent. On October 8, 1965, at her husband's request she was transferred to Seton Institute. Dr. James Miller and Dr. Charles Williams also examined Mrs. Fine the day after she entered Seton Institute and certified her as mentally incompetent. Doctors Hyman S. Rubenstein, Jonas Rappaport and George Lasson, all witnesses called by Mrs. Fine, testified as to her mental instability. The record reveals that she left Seton Institute on October 21, 1965, against medical advice.

In any action for false imprisonment it is necessary for the plaintiff to prove by a preponderance of evidence that he was deprived of his liberty by another without his consent and without legal justification. *Great Atlantic & Pacific Tea Company v. Paul*, 256 Md. 643, 654, 261 A. 2d 731 (1970). The witnesses called by Mrs. Fine supported the opposite conclusion. Recognizing the weakness of her case, Judge Maguire gratuitously inquired several times of Mrs. Fine as to whether she wished to testify on her own behalf and she failed to avail herself of these opportunities. Judge Maguire very clearly and patiently explained to her the effect of the motion for a directed verdict and, without expressly so stating, implied to her, before so ruling, that unless she took the witness stand to testify or produced additional testimony, she had not presented sufficient evidence to warrant the case going to the jury.

In argument on appeal, her counsel ingeniously now posit that she did testify. They contend that the rhetorical questions which Mrs. Fine posed to the witnesses, her argumentative questions to them and the many colloquies between her and the bench should be considered as evidence. In these exchanges she stoutly disclaimed that she voluntarily submitted herself to admission and confinement at the Taylor Manor Hospital, denied her signature on the admission form and stated that she was taken from her home against her will. Unfortunately for her, she did not testify to these material facts as a witness.

The appellant's counsel in oral argument emphasized that the mere fact that the statements made by Mrs. Fine in the courtroom during the progress of the trial were not conditioned by an oath, pursuant to the provisions of the Maryland Code (1968 Repl. Vol.), Art. 1, §§ 9, 10 and 11 or given in an orthodox manner from the witness stand, should not have barred them from being considered as testimony. Counsel further argues that, were these statements to have been considered as testimony, the issue of the voluntariness of her admission to the hospital would have been controverted and accordingly, the case should have gone to the jury.

Assuming, *arguendo*, that the fact that the statements made by Mrs. Fine were not under oath or by affirmation should not have prevented her statements from being considered testimony, there is yet a more significant reason as to why her statements should not be equated with testimony, namely, because these statements were not subject to cross-examination by the defendants' counsel or subject to impeachment. Indeed, the defendants did not even have the opportunity to question her capacity to testify, were they so disposed. *Wigmore on Evidence,* Vol. II, § 477, 3rd ed. This in our opinion would constitute a violation of the "due process" clause of the Constitution of the United States (Article XIV, Section 1) and Article 23 of the Declaration of Rights of the Constitution of Maryland. In *Ridgeway, Inc. v. Seidman,* 243

Md. 358, 364, 221 A. 2d 393 (1966), Prescott, C. J., speaking for the Court stated:

> "Of course, cross-examination plays a most important part in the administration of justice in this country. It has been stated that it is one of the most efficacious tests for the discovery of the truth. *Regester v. Regester,* 104 Md. 1. And, when it relates to the facts in issue or to the issues themselves, it may, within reasonable limits, be pursued as a matter of right. 98 C.J.S. *Witnesses,* § 368. * * *." 243 Md. at 364.

Additionally, were such a procedure, as urged upon us by the appellant, to be condoned in those cases where a litigant appears *pro se,* there would be no line of demarcation between statements made by the litigant in his capacity as his own counsel and those intended as his testimony as a witness. Indeed, under such a procedural format the opening and closing statement might well be construed as narrative testimony. Obviously, such an amorphous procedure would lead to forensic chaos.

The appellant also challenges the rulings of the lower court regarding its refusal to issue subpoenas for certain witnesses and to continue the case until the witnesses were available. A review of the record reveals that these objections are without merit. There was no proffer made as to what the substance of the testimony of the witnesses might be, nor was there compliance with Maryland Rule 527 c. We likewise find no merit to Mrs. Fine's contention regarding questions asked by the court of witnesses, one of which covered the recapitulation of officer Krauch's testimony on both direct and cross-examination, and the other being in the nature of a summation of the testimony of Dr. Klark. Judge Maguire demonstrated commendable restraint throughout this trial and endeavored to assist Mrs. Fine in every legitimate way to try her case. He did attempt on two occasions to sum up rather disjointed testimony by asking a question of the witnesses which summarized and explained their testimony; how-

ever, we hold that under the circumstances this action would have proved helpful to the jury, should the case have gone to the jury, and was within permissible limits of interrogation by the court. *Cumberland and Allegany Gas Company v. Caler,* 157 Md. 596, 601, 146 A. 750 (1929).

Finally, appellant complains that the court stenographer did not make available to her for the purpose of impeachment of witnesses the transcript of testimony in a former divorce case. The record reveals that her request for this transcribed testimony was not timely made, that no proffer was made concerning its relevance to the present case, nor were the witnesses whose testimony she wished to impeach by the transcript called by her. Furthermore, it would appear that Judge Maguire made every effort to obtain for her the requested portions of the transcript and apparently was successful in obtaining some of it. In short, we fail to see how Mrs. Fine's case was prejudiced by the unavailability of the transcript.

*Judgments affirmed, appellant to pay costs.*