## NORVELL *v.* SAFEWAY STORES, INC. ET AL.

(Two Appeals in One Record)

[No. 80, October Term, 1956.]

16

*Decided January 11, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

*Charles K. Davies, Jr.,* and *Walter G. M. Fields* for the appellant.

*Arthur B. Hanson* and *Calvin H. Cobb, Jr.,* with whom was *D. Eugene Walsh* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

David L. Norvell brought two actions at law to recover damages for malicious prosecutions instituted by Safeway and its District Manager, George S. King, respectively. The actions were consolidated, and removed to Carroll County for trial. At the close of the plaintiff's case the court granted prayers for directed verdicts. From judgments on those verdicts the appeal comes here.

On February 25, 1953, the appellant was the manager of a Safeway store in Bethesda, Maryland. The appellant's immediate superior was the appellee, King, who had replaced a former District Manager about two weeks before. On that date Norvell resigned his position, and on the following day wrote a letter to Mr. Balshaw, Division Manager in Washington, confirming his verbal resignation to Mr. King. In that letter he complained of "mental pressure as a result of certain phases of" the store's operation, and of "being shoved around". He declined to stay on for an additional two weeks as Mr. King had requested. On July 16, 1953, he wrote to the president of Safeway, in California, that he had been forced to resign "due to unreasonable and dishonest tactics of Mr. George King". He said: "Evidently the thinking and practices of Mr. King have the approval of Mr. Edgar Balshaw since following the receipt of my letter of resignation Mr. Balshaw made no effort to contact me for a discussion of the matter." On August 13, 1953, he wrote Mr. Balshaw a long letter, stating that when he first was employed by Safeway as a clerk, several years before, he had been asked to "hit" the customers, and engage in "questionable" practices, such as to "wrap a gob of excess fat around the end of a rib roast and sell it for seventy-five cents a pound". He left because he was "fed up with the crooked deal". On November 12th, he was demanding that "my forced resignation from the

Company be reviewed". He admitted that he had participated "in the carrying out of these dishonest sharp practices", but felt he "should be reinstated by the Company in a position comparable to that of Location Manager". He also stated that "In being forced to resign * * * [he] suffered not only financial loss but also security for himself and family in the way of group hospitalization, group insurance, retirement plan membership and profit sharing benefits." On November 21, he wrote to the president of the Washington Board of Trade that dishonest, sharp practices of the Safeway Company had forced his resignation. On December 7, he wrote Mr. Warren, requesting that he be permitted to prove his charge of sharp practices, and "consideration given as to my being reemployed with the Company." On January 15, 1954, he wrote Mr. Warren referring to the "underhanded, off color, crooked manner in which all phases of the Company's operations are handled in the Washington D. C. Division". He closed with the sentence: "As yet there has been no reply from you to my letter of December 7, 1953." He sent copies of this letter to twenty-four persons and corporations, including several banks, the Better Business Bureau, and the Washington newspapers.

On January 22, 1954, J. Arnold Anderson, Assistant Secretary of Safeway, swore out a warrant charging that Norvell on January 15, 1954, "with intent to extort money or procure other profit did unlawfully falsely accuse Safeway Stores, Inc., a Maryland Corporation, of matters which, if true, would tend to bring the said Safeway Stores Inc., into contempt or disrepute". On the same day George S. King swore out a warrant charging that Norvell on January 15, 1954, "did unlawfully falsely accuse the said George S. King of matters which, if true, would tend to bring the said George S. King into contempt or disrepute". Upon demand for jury trial, the cases came on for trial in the Circuit Court on April 8, 1954. Upon petition of the State's Attorney the court appointed Mr. Arthur B. Hanson as Special Assistant State's Attorney "for the purpose of assisting in the prosecution of Nos. 868 and 869 Criminals." Presumably the appointment was under Code (1951), Art. 26, sec. 7. Cf. *Coblentz v.*

*State,* 164 Md. 558, 565. Mr. Hanson was at that time, and had been, counsel for Safeway. On the same day trial was had in No. 868, the extortion charge, and the jury rendered a verdict of not guilty. On May 17, 1954, the State entered a *nolle pros* in the other case.

The question presented on this appeal is whether the court erred in taking the cases from the jury. The ground of its action was that there was no evidence to show a want of probable cause for either prosecution. The appellees filed a motion to dismiss the appeal on the ground that the appellant did not print in his Record Extract all of the testimony necessary to decide the point. The appellant printed all of the correspondence mentioned above, and the warrants and docket entries relating to the criminal trials. The additional testimony printed by the appellees seems to have little relevancy to the point at issue. It consists chiefly of testimony by Norvell and his brother as to fruitless conferences with the appellees while the criminal cases were pending, looking toward the possible settlement of the controversy. Apparently Safeway was willing to dismiss the criminal charges and give Norvell a letter of recommendation if he would sign a letter of retraction and releases. It was unwilling to reemploy him, as he insisted. This evidence was offered by the appellant on the theory that it tended to show malice. We think there was reasonable ground for a difference of opinion as to whether this testimony should have been printed in support of the issue raised, and we think the motion should be overruled. Cf. *Sawyer v. Novak,* 206 Md. 80, 84.

In regard to the action against Safeway, it was conceded that Anderson was an officer of the corporation and duly authorized to swear out the warrant. The offense charged was in the language of the Statute. Code (1951), Art. 27, sec. 635, provides: "Any person who with intent to extort money or procure other profit shall falsely accuse or threaten to accuse another of any crime, or of anything which if the accusation were true would tend to bring him into contempt or disrepute, shall be deemed guilty of a misdemeanor, punishable by imprisonment in jail or the house of correction not exceeding two years." The jury acquitted the appellant of

the offense charged, and this satisfied one of the requirements of the action for malicious prosecution, that there be a termination of the proceeding in favor of the accused. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, and cases cited. In that case there had been an acquittal before a trial magistrate, after a hearing on the merits. See also *Banks v. Montgomery Ward,* 212 Md. 31.

But the fact of acquittal after trial on the merits is not evidence of a want of probable cause. *Prosser, Torts* (2d ed.), p. 656, § 98; *Restatement, Torts,* § 667, comment (c); *Western Union Telegraph Co. v. Thomasson,* 251 F. 833, 837 (C. C. A. 4th). This is said to be for the reason that the finding may be based on a mere lack of proof beyond a reasonable doubt, and throws no light on the sufficiency of the evidence on which the instigator acted at the time the proceedings were instituted, because the verdict may have been based on other evidence produced by the defense that was unknown to the instigator. We find nothing in the Maryland cases at variance with this view. In *Stansbury v. Luttrell,* 152 Md. 553, a judgment for the plaintiff was reversed because of a failure to establish a want of probable cause, despite the fact that he had been acquitted of larceny after a jury trial. In *Safeway Stores, Inc. v. Barrack, supra,* we held that the case was properly submitted to the jury because of the conflict in the evidence as to what occurred prior to the arrest. We referred to the fact that in *Nance v. Gall,* 187 Md. 656, and in *Straus v. Young,* 36 Md. 246, it was said that acquittal before a magistrate would permit an inference of a want of probable cause. In both those cases, however, there was not an acquittal on the merits. The charge in each case was of a felony which the magistrate had no authority to try, and the preliminary hearing was for the sole purpose of determining whether the accused should be held for action of the Grand Jury. The distinction is well recognized and supported by the weight of authority. See Notes, 24 *A. L. R.* 261; 94 *A. L. R.* 744; 114 *A. L. R.* 885; and *Prosser, Torts* (2d Ed.), § 98. It has been recognized in the *Restatement, Torts,* §§ 663, 667. The reason for the distinction is that discharge by a magistrate on preliminary hearing may furnish some evi-

dence of a want of probable cause, whereas acquittal after trial does not. There is some authority to the effect that even a discharge on preliminary hearing is not evidence of a want of probable cause, and, in the rule adopted by the *Restatement,* discharge only makes out a *prima facie* case where it is unexplained. In the instant case we hold that the acquittal by the jury is not evidence of a want of probable cause, and we must examine the other evidence to determine its legal sufficiency.

The falsity of the statements made in the letters offered in evidence is an essential element in the statutory crime of extortion. *Lano v. State,* 195 Md. 363, 367; *Lenoir v. State,* 197 Md. 495, 505. We are not informed as to whether any evidence on the point was offered in the criminal case. It seems to have been the rule at common law that truth was not a defense to a criminal libel. See *Bishop, Criminal Law* (9th ed.), § 919. But see Code (1951), Art. 75, sec. 19. In the civil cases at bar the appellant did not offer any evidence tending to show that the statements were true, but relied upon the acquittal in the one case and the *nolle pros* in the other as proof of a want of probable cause. Nor does the appellant argue in his brief that the statements were true. Since the burden of proving a want of probable cause is on the plaintiff, we must assume that falsity is conceded for the purposes of this case.

The appellant argues that "clearly these letters contain no intent to extort money or procure other profit". But we think these clearly show the appellant's motive in making and broadcasting the charges of dishonest practices was to force his reinstatement in a position that carried with it privileges and emoluments of a financial nature. In short, we think it appears on the face of the record that his intention was to procure a "profit" within the meaning of the statute.

The trial court seemed to take the view, in withdrawing the case from the jury, that Safeway made a mistake of law, but was protected by the rule that it acted upon the advice of counsel after full disclosure. Cf. *Restatement, Torts,* §§ 662, 665. But the court also said: "* * * it is just my own opinion, that it would be common law criminal libel which was

involved rather than Section 635 of Article 27. * * * [the State's Attorney] could consider it probably a violation of that section also." He also expressed the view that the two crimes were analogous. Cf. *Jordan v. Piano Co.,* 140 Md. 207, 213. We find it unnecessary to discuss the questions of advice of counsel or whether the crimes were analogous, for we hold that there was no mistake of law, and that, assuming the falsity of the letters, a *prima facie* case of violation of the statute was made out and there was probable cause for the swearing out of the first warrant.

In regard to the second warrant, we think the crime charged was criminal libel. While we have found no Maryland case where criminal libel has been brought except in cases of public officials, it is noted in *Wharton, Criminal Law* (12th ed.), § 1933, that libels affecting livelihood or trade, or the reputation of a merchant, are sufficiently public in character to give rise to the action. Cf. *Blumhardt v. Rohr,* 70 Md. 328, 335 (action of civil slander). The author also deals with statutory provisions providing penalties for extortion by means of threatening letters as a branch of the general subject. § 2006. In this case there was no trial, but it is generally held that a *nolle pros* is a sufficient termination of the proceeding. *Prosser, Torts,* 2d Ed., § 98; *Restatement, Torts,* §§ 659, 660; *Taylor v. Hodge,* 50 S. E. 2d 307 (N. C.). *Contra, Fogg v. First Nat. Bank of Boston,* 167 N. E. 251 (Mass.). In *Barrett v. State,* 155 Md. 636, 638, it was noted that the effect of the entry was to terminate the case, so that there could be "no further prosecution under that indictment." It was held that the State's Attorney had an absolute right, with the court's approval, to make the entry, even over the protest of the accused.

Whether such a termination is evidence of a want of probable cause is a question on which the authorities are divided. *Prosser* inclines to the view that it is not. See also *Western Union Telegraph Co. v. Thomasson, supra,* p. 838, and *Shoemaker v. Shoemaker,* 78 A. 2d 605, 608 (N. J. App. Div.). The *Restatement, Torts,* § 665, takes the position that a dismissal by a public prosecutor is not evidence of a want of probable cause, but *contra,* as to dismissal by a private prose-

cutor. In the latter situation it has been held here that the dismissal by an instigator is not in itself sufficient evidence. *Flickinger v. Wagner,* 46 Md. 580, 603. In the instant case the abandonment was probably due to the acquittal in the first case. We think it cannot properly be ascribed to the State's Attorney's belief in a want of probable cause at that time, far less to evidence of a want of probable cause at the time the warrant was sworn out.

For the reasons stated we think the cases were properly withdrawn from the jury.

*Judgments affirmed, with costs.*