547 A.2d 1105

Donald E. ALLEN

v.

BETHLEHEM STEEL CORPORATION, et al.

No. 51, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Oct. 3, 1988.

Certiorari Denied Dec. 21, 1988.

**644**

Joseph L. Evans (James J. Nolan, Jr. and Pierson & Pierson, on the brief), Baltimore, for appellant.

Rudolph L. Rose (Stephen M. Silvestri, Stephen S. McCloskey and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellees, Bethlehem and James Moskos, Jr.

Daniel Karp (Donald C. Allen and Allen, Thieblot & Alexander, on the brief), Baltimore, for appellees, Vernon Green and Green Investigation Associates, Inc.

Argued before GILBERT, C.J., and MOYLAN and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

Donald Allen, an employee of Bethlehem Steel Corporation sued Bethlehem; James Moskos Jr., a Worker's Compensation attorney employed by Bethlehem; and Vernon Green and Vernon Green Associates (Green), private investigators. The suit was grounded on a multitude of claims, namely: 1) invasion of privacy, 2) false imprisonment, 3) abuse of process, 4) malicious prosecution, 5) abusive discharge, 6) civil conspiracy, and 7) intentional infliction of emotional distress. The Circuit Court for Baltimore City granted summary judgment in favor of all defendants on all counts of the complaint. Only the count concerned with intentional infliction of emotional distress is not before us on this appeal.

## FACTS

From the record we learn that Allen was injured in February 1978 when he fell from a platform while working at Bethlehem. The Workers' Compensation Commission, as a result of the injury sustained by Allen, awarded temporary total disability benefits to him. A supplemental award of temporary total disability benefits was made because of Allen's continuing disability. For reasons not apparent from the record, Bethlehem became suspicious of Allen's representation of his physical condition. Bethlehem hired Green to conduct surveillance of Allen's activities. Green observed the claimant and filmed some of Allen's activity

during a period of time between March 25 and June 25, 1982.

In June 1982 Allen applied for additional temporary total benefits. At the hearing on the petition, Bethlehem called Green as a witness. Green testified concerning his observations of Allen's activities, but Allen withdrew his claim for benefits before the film of his activities was shown.

Allen contends he withdrew his claim for benefits under the Compensation Act because of a threat made by Moskos to prosecute Allen for insurance fraud. He also asserts that Moskos demanded that he resign from his employment with Bethlehem. Allen, however, did not resign.

Two months after the Workers' Compensation Commission hearing, Bethlehem discharged Allen, alleging misrepresentation of his physical condition. During testimony Allen gave at the compensation hearing, Moskos and Bethlehem Steel apparently concluded that there was a serious discrepancy between Allen's testimony concerning his condition and Green's observations of Allen's activities.

The United Steel Workers of America filed a grievance relative to Allen's discharge, averring an absence of just cause. The grievance proceeding resulted in Allen's reinstatement.

In the meantime, Moskos reported to the State's Attorney's Office the alleged discrepancy between Allen's testimony and Green's observations. An investigation by that office was conducted. It resulted in Allen's indictment and arrest on a charge of perjury. Allen was incarcerated in the Baltimore City Jail. Twelve days after his arrest, the indictment was *nolle prossed* by the State's Attorney.

We turn now to consideration of the various counts asserted by Allen upon which the circuit court entered summary judgment against him.

### *Invasion of Privacy*
(Count 5 of Complaint)

Maryland currently recognizes four forms of invasion of privacy:

1. an unreasonable intrusion upon the seclusion of another;

2. an appropriation of the other's name or likeness;

3. unreasonable publicity given to the other's private life; and

4. publicity which unreasonably places the other in a false light before the public.

*Klipa v. Bd. of Educ. of A.A. Co.*, 54 Md.App. 644, 652, 460 A.2d 601 (1983); *Household Fin. Corp. v. Bridge*, 252 Md. 531, 537, 250 A.2d 878 (1969).

Allen has alleged a false light invasion of privacy. That form of the tort requires a publication which unreasonably places the plaintiff in a false light before the public. *Klipa*, 54 Md.App. at 656, 460 A.2d 601. The information published must be false or untrue, at least to the extent that it portrayed the plaintiff in an objectionable light. Gilbert, *Maryland Tort Law Handbook*, § 15.5 (1986).

■ Allen maintains that Green, Moskos, and Bethlehem published information that placed him in a false light. This, he asserts, is demonstrated by the inaccurate films of his activities, together with the film being made available to Allen's union, the arbitrator, and to either the Baltimore City Grand Jury or the State's Attorney. Moreover, Allen alleges that alterations were made to the films in order to portray inaccurately his physical condition. The allegation is flatly denied by all of the appellees. We think those disputed facts would render summary judgment inappropriate since they give rise to a genuine dispute of a material fact.

■ Although neither appellate court of this State has addressed the question of whether the "false light" action is governed by the statute of limitations applicable to defamation actions or to an invasion of privacy, the issue has been addressed in two United States District Court of Maryland cases. There in *Smith v. Esquire, Inc.*, 494 F.Supp. 967, 970 (1980), the Court said: "[W]here the underlying 'false light' relied upon arises out of an alleged

defamatory statement, the proper course of action is actually defamation and accordingly the case, whether stated in terms of defamation or invasion of privacy is governed by the one year statute of limitations."

The Court went on to state that "to hold otherwise would allow a plaintiff, in any defamation action where there has been a general publication, to avoid the otherwise applicable one year statute merely by phrasing the cause of action in terms of invasion of privacy." *See also Robinson v. Vitro Corp.,* 620 F.Supp. 1066 (1985).

■ We disagree with *Smith.* What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear. An action for libel and slander shall be filed within one year of the date it accrues. Courts Art. § 5–105. Other tort actions shall be filed within three years of the date they accrue. Courts Art. § 5–101. Nowhere in § 5–101 does it provide an exception for "false light" cases. Even though we recognize the district court judge's view as to how the statute of limitations will be avoided, that "loophole" must be plugged by the Legislature. Limitation statutes are generally strictly construed. *Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389 (1980), *cert. denied,* 289 Md. 735 (1981). Courts Art. § 5–101 means presumably what it says, and we decline to rewrite it so as to proscribe the bringing of a "false light" case after a period of one year.

### False Imprisonment
(Count 3 of Complaint)

■ An action for false imprisonment arises when one unlawfully causes a deprivation of another's liberty against his will. *Fine v. Kolodny,* 263 Md. 647, 651, 284 A.2d 409 (1971). It may also arise when one *knowingly* gives false information to a law enforcement officer which leads to another person's arrest. *Newton v. Spence,* 20 Md.App. 126, 136, 316 A.2d 837 (1974). Nevertheless, a person is not liable for false imprisonment when in good faith he or she provides information, however mistaken, to law enforce-

ment officers. *Newton,* 20 Md.App. at 135, 316 A.2d 837. Allen contends that the appellees provided false information to the State's Attorney's Office, and that formed the basis of the perjury charge. The essence of Allen's complaint is that the film had been altered. He supplied an affidavit by a former FBI document examiner who stated that the film was not the original film. We think that raised a genuine dispute of a material fact as to whether the appellees *knowingly* provided false information to the State's Attorney. Were that all that was before us, we would reverse, but the Assistant State's Attorney made affidavit that he conducted an "independent investigation" and concluded that Allen should be charged with perjury. Because of the State's Attorney's independent investigation, we believe that the false imprisonment count must fall. We, therefore, affirm the summary judgment decision of the circuit court on that count.

### Abuse of Process
### (Count 2 of Complaint)

The tort of abuse of process occurs when a party willfully misuses criminal or civil process *after it has issued* so that he or she may obtain a result not contemplated by law. *Krashes v. White,* 275 Md. 549, 555, 341 A.2d 798 (1975). The elements of the tort include an ulterior purpose and a willful act in the use of the process, an act not proper in the regular conduct of the proceeding. *Palmer Ford, Inc. v. Wood,* 298 Md. 484, 511, 471 A.2d 297 (1984). An act or threat not authorized by the process or aimed at an illegitimate objective is required. *Id.* Absent facts indicating that the appellees tried to force Allen to resign *after* he had been arrested for perjury, the claim must fall of its own weight. There are no post-arrest facts asserted. The decision of the circuit court with respect to count II is affirmed.

### Malicious Prosecution
### (Count I of Complaint)

To prove a malicious prosecution case, the plaintiff must show:

"1. There has been a prosecution initiated or continued by the defendant against the plaintiff;

2. The prosecution has terminated in favor of the plaintiff;

3. The prosecution was brought by the defendant without probable cause; and

4. The prosecution was initiated with malice or with a purpose in mind other than bringing an offender to justice."

Gilbert, *Maryland Tort Law Handbook*, § 4.7.

Allen's contention that abetting the institution of the proceeding is sufficient to meet the first element of the cause of action is correct. *Nance v. Gall,* 187 Md. 656, 667–69, 50 A.2d 120 (1946); *Newton,* 20 Md.App. at 142, 316 A.2d 837. The fact that the State's Attorney's Office, and not the appellees, actually instituted the perjury proceeding does not mean that Allen is precluded, *ipso facto,* from satisfying the first element of the tort.

■■■■ The focus of the malicious prosecution issue then is whether there was probable cause for Allen's arrest. Probable cause was defined in *Palmer Ford,* 298 Md. at 493, 471 A.2d 297, as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused is guilty." Although it is clear that dismissal by a magistrate is *prima facie* evidence of a lack of probable cause, *Banks v. Montgomery Ward,* 212 Md. 31, 40, 128 A.2d 600 (1957); *Norvell v. Safeway Stores,* 212 Md. 14, 20–21, 128 A.2d 591 (1957), the effect of a *nolle prosequi* entry is far from crystalline. Whenever a *nolle pros* is entered by the State, the court must look at the circumstances surrounding the State's decision so as to determine whether there was an absence of probable cause. *Exxon v. Kelly,* 281 Md. 689, 695, 381 A.2d 1146 (1978); *Shipp v. Autoville,* 23 Md.App. 555, 575, 328 A.2d 349 (1974); *Norvell,* 212 Md. at 21, 128 A.2d 591.

Determining the State's reasons for entering the *nolle prosequi* in the case *sub judice* requires a factual inquiry. Since no factual inquiry was made, much less decided, we reverse and remand to the circuit court for trial.

### *Abusive Discharge*
#### (Count 4 of Complaint)

Since *Adler v. American Standard Corp.*, 291 Md. 31, 43, 432 A.2d 464 (1981), Maryland has recognized the tort of wrongful discharge. It is defined as the willful termination of employment by the employer because of the employee's alleged failure to perform in accordance with the employer's expectations, and the termination is contrary to a clear mandate of public policy. *Adler*, 291 Md. 31, 43, 432 A.2d 464 (1981). Allen avers that he was discharged in retaliation for pursuing Workers' Compensation Act benefits. The appellees, to the contrary, assert that Allen was fired because of the appellees' belief that he misrepresented his physical condition. Allen made several claims for benefits which he asserted were due him as a result of the injuries sustained when he fell from the platform. Appellees contend that Allen's argument that he was discharged for pursuing workers' compensation is flawed because he withdrew his last claim. The fallacy in appellees' argument is that Allen had filed a number of claims. The one that was withdrawn was but the last. The dispute here involves the reasons why appellant was fired. Was he fired because of the last claim? or the first? or any in between? We are unable to answer that rhetorical question. It is a factual dispute which may not be resolved by summary judgment.

Appellees next argue that an abusive discharge cause of action is not available to an employee who is subject to the terms of a Collective Bargaining Agreement because that action has been preempted by federal labor policies. The United States Supreme Court, in a case concerned with wrongful discharge, held that questions of state law involving labor-management relations can be determined by judges in a court of law as long as those

questions can be resolved without interpreting the Collective Bargaining Agreement itself. *Lingle v. Magic Chef,* 486 U.S. ——, ——–——, 108 S.Ct. 1877, 1884–85, 100 L.Ed.2d 410, 422–23 (1988).

All parties to the instant case cite *Ewing v. Koppers Co.,* 312 Md. 45, 537 A.2d 1173 (1988). There, the plaintiff did not prevail on his abusive discharge claim because an arbitrator found, in accordance with collective bargaining procedures, that the plaintiff had been fired for just cause. *Ewing* made clear, however, that a cause of action for abusive discharge lies when the discharge occurs solely because the employee filed a workers' compensation claim. *Ewing,* 312 Md. at 50, 537 A.2d 1173.

■ Federal preemption policies enter a case by barring a decision by the court which is inconsistent with the arbitrator's final decision. This means that a court of law may not entertain an abusive discharge claim if an arbitrator has found that just cause for the termination existed. Were a court to consider that type of claim, it would clearly violate 29 U.S.C. § 185. *Ewing,* 312 Md. at 56, 537 A.2d 1173. In the case at bar, the trial court is not prohibited from entertaining the abusive discharge claim inasmuch as the arbitrator found that Allen was discharged without just cause. A finding for plaintiff obviously would not be inconsistent with the arbitrator's decision, and no violation of § 301 could occur.

■ Summary judgment in favor of the appellees was erroneously entered, and we reverse and remand for further proceedings.

### Civil Conspiracy
#### (Count 6 of Complaint)

"A civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff."

*Beye v. Bureau of National Affairs,* 59 Md.App. 642, 658, 477 A.2d 1197 (1984), quoting *Green v. Wash. Sub. San. Comm'n,* 259 Md. 206, 221, 269 A.2d 815 (1970). A plaintiff must show that the object of the agreement is either an unlawful act or a lawful act to be accomplished by unlawful means. *Beye,* 59 Md.App. at 659, 477 A.2d 1197.

Allen asseverates that he was wrongfully discharged so as to prevent him from further pursuing workers' compensation benefits. He also asserts that the discharge was in retaliation for the claims he had already filed. Any determination as to whether appellees were involved in the alleged civil conspiracy necessarily depends upon a finding as to the reason or reasons for Allen's dismissal. That finding, of course, necessitates a resolution of disputed facts and, therefore, is inappropriate for summary judgment. We reverse and remand the conspiracy count for further proceedings.

JUDGMENTS ON COUNTS II and III AFFIRMED; JUDGMENTS ON COUNTS I, IV, V, AND VI REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS.

ONE–HALF OF THE COSTS TO BE PAID BY APPELLANT; ONE–HALF OF THE COSTS TO BE PAID BY APPELLEES.