' TRAXLER, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s opinion except as to Part IV, as to which I take a different view. At summary judgment, Campbell presented affidavits from Angela Siegel Clark, the public relations consultant for EKR (a company in which Campbell was a principal) and Timothy Weddington, the President of Salyersville National Bank where EKR banked. These individuals stated that Polan made quite a few statements to them about Campbell’s character, his criminal history and his past business dealings. While some of what Polan told them was true and verifiable, there is much that was not. For example, Weddington stated that Polan told him that Campbell was alleged to have murdered a business associate, that he had been found guilty of price fixing and was consequently barred from government contracts, and that he had been convicted of *192 RICO violations. See J.A. 2780. Weddington also indicated that Polan told him that he, Polan, was working with Lyon to discredit and ruin Campbell. See J.A. 2781.
Clark stated Polan told her that Campbell had served time in jail for a RICO violation, that he was a murderer, and that he had been blacklisted from jobs across the United States. See J.A. 2793-95. Polan also stated, according to Clark, that he was working with Lyon to hurt Campbell and that Lyon had paid Polan between $200,000 and $300,000 for that purpose. See J.A. 2794.
The parties apparently agree that these statements, if indeed made and proven false as Campbell states they are, would support a claim under Maryland law for false light invasion of privacy. See Bagwell v. Peninsula Reg’l Med. Ctr., 106 Md.App. 470, 665 A.2d 297, 318 (Md.Ct. Spec.App.1995); Allen v. Bethlehem Steel Corp., 76 Md.App. 642, 547 A.2d 1105,1108 (Md.Ct.Spec.App.1988). However, in order to make such a claim actionable against Lyon, Campbell must be able to tie Polan’s statements to Lyon, which Campbell asserts he can do through the Clark and Weddington affidavits, provided they are admissible. I agree that the statements of Clark and Weddington are admissible under Federal Rule of Evidence 801(d)(2)(E).
Rule 801(d)(2)(E) instructs that a statement is not inadmissible hearsay if
[t]he statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).
The statements attributed to Polan by Clark and Weddington provide strong evidence of a conspiracy, but under Rule 801(d)(2)(E) they are not enough in and of themselves. Here, though, the admissibility of this testimony is established by other independent evidence which corroborates the existence of the conspiracy reflected in Polan’s statements. Campbell has produced a substantial number of fináncial documents showing large and frequent transfers of money from Lyon to Polan and, in some instances, to Polan’s eleven-year-old daughter. See J.A. 2394-2594.
If there were some legitimate relationship between Lyon and Polan to justify the payments, Campbell might fall short on his proof. But here Campbell alleges, and apparently can show, that the only common ground shared by Lyon and Polan was their animosity toward Campbell. The payments from Lyon to Polan and his family between 1993 and 1998 approximated $300,000, see J.A. 231-233, 517-519, 856-862, which substantiates Clark’s affidavit, and Campbell has evidence that Lyon did not attempt to characterize these payments as “loans” until long after they were made. In my view, the giving of a large amount of money in an extremely suspicious manner is very incriminating and sufficient to corroborate the existence of a conspiracy between Poland and Lyon and to make the statements of Clark and Weddington admissible under Rule 801(d)(2)(E). Because the admission of this evidence would preclude summary judgment against Campbell on his claim for false light invasion of privacy, I respectfully dissent.